## GILMOR ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 33, October Term, 1954.]

*Decided December 10, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Douglas H. Gordon,* for appellants.

*Alexander Harvey, II,* and *Melvin J. Sykes,* with whom were *Melvin S. Silberg* and *Ober, Williams, Grimes* and *Stinson,* on the brief, for the appellee, The Maryland Advertising Company, and *Thomas N. Biddison,* City Solicitor, and *Francis J. Valle,* Assistant City Solicitor, on the brief, for the appellee, Mayor and City Council of Baltimore.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from an order of the Baltimore City Court, which affirmed the action of the Board of Munici-

pal and Zoning. Appeals of Baltimore in granting an application for the erection of billboards in a first commercial use district. The appellants are nearby property owners.

The Maryland Advertising Company, one of the appellees, sought a permit to erect, on an unimproved triangular lot at the southeast corner of Cathedral and Chase Streets in Baltimore, two illuminated poster boards, which were to be of all steel construction, set back seventy feet from the south edge of, and parallel with, Chase Street, and eight feet above ground, and along and at least two feet away from the north wall of the building known as 1037 Cathedral Street.

The Baltimore City Zoning Ordinance, sec. 37(3) (Revised by Ordinance 711, approved May 21, 1953) permits a "billboard for the display of outdoor advertising or poster boards" in first commercial, second commercial, and industrial use districts, provided they are approved, after a public hearing, by the Board of Municipal and Zoning Appeals. Sec. 38 provides that: "No such permit shall be issued until the application shall have been approved by the Board of Municipal and Zoning Appeals * * *", which shall require the applicant to post the premises and advertise in the customary manner, and which shall submit drawings, plans and other data to the Board of Fire Commissioners for investigation and report as to the fire hazard, the Commissioner of Health for investigation and report as to the health hazard, and to the Traffic Commission for investigation and report as to the traffic hazard. Sec. 39 provides the guides and standards in cases of original jurisdiction, which applications for the use of billboards come under. Its directions are these: "The Board of Municipal and Zoning Appeals shall fix a reasonable time for the hearing as well as give due notice to the parties in interest. The Board of Municipal and Zoning Appeals shall inspect the premises and shall hold a public hearing, giving all parties in interest the right to testify as to any material facts in connection with the proposed use, and shall act

as the fact-finding body and shall approve or disapprove the issuance of the permit for the proposed use in accordance with the evidence adduced before it and from its own investigation as to whether or not such proposed use would menace the public health, safety, security or morals, and as a further guide to their decision upon the facts of the case, they shall gvie consideration to the following: * * *." Eight factors, which the Board is to consider, are then set forth, most of which, in the nature of things, are not applicable to billboards. The pertinent ones are: the rules and regulations in the Ordinance; the decisions of this Court in similar cases; the type of electric illumination for the proposed use, "with special reference to its effect upon nearby structures and the glare, if any, from such illumination in surrounding sleeping quarters, if any."

At the hearing before the Board, the only protestants were the Misses Gilmor, who owned 22 West Chase Street, and Mr. William Goldman, who owned 17 West Chase Street, who are appellants, and their counsel, who doubled as a witness. Miss Frances Gilmor admitted that she would not be able to see the signs from her property but felt that they would be: "a great detriment and great eyesore. * * * I think it pulls down the whole tone of the property." Mr. Goldman's testimony was that he had rented his property to a drugstore "and the signs will not do my property much good." Mr. Douglas Gordon, when asked how the signs would affect the public health, safety, security or morals, testified that although the neighborhood was first commercial, there were a number of residences dotted about in it, and that these people should not have to look from their homes at illuminated signs "because of the fact it is obviously injurious to their property and injurious to sound zoning, the thing you are administering, and therefore injurious to the City as a whole." When asked by a member of the Board: "What right have we to refuse the sign. Is it injurious to health, safety and morals?", his answer was: "It is obviously injurious to all these. Everyone

here knows the minute that sign goes up the standards of the neighborhood go down. * * * everyone knows an obnoxious sign of this kind in a neighborhood where people live pulls down values and living conditions and leads to slums which do produce these things of health and safety the law calls for." A moment later, he added: "You have asked me why this injures the health, etc. and I have told you." This was substantially all of the evidence of the protestants. The reports of the Fire Commissioner, the Health Commissioner and the Traffic Commission found no hazard to, or adverse effect upon, the matters under their respective jurisdictions. The Board unanimously approved the application. Its resolution recited that it had inspected and studied the premises and the neighborhood, held a public hearing, and considered all of the data submitted, and found that the property involved is in a first commercial use district, that to the south of it was a radiator repair shop, to the north, across Chase Street, an automobile tire and service station, an automobile upholstering establishment, an automobile sales and service building, and that across Cathedral Street, the entire block on the west side is occupied by commercial enterprises and service shops. It added that it was apparent to the Board that the proposed signs would not be visible from the homes of those who had protested. It found that the proposed signs "would not create hazards from fire or disease and would not menace the public health, safety, security or morals."

On appeal to the Baltimore City Court, a number of the adjoining property owners intervened. One additional witness was there produced, a real estate man, who testified that the establishment to the south of the proposed signs on Cathedral Street, which the Board had called a radiator equipment place, was occupied by Parks & Hull, who dealt in automobile equipment and repair. He also testified that the building to the north, across Chase Street, described by the Board in its opinion as an automobile tire and service station, was now used for the storage of pinball machines. This had been

noted by one of the Board members at the hearing, who said, as did the witness, that it had formerly been occupied by the Lee Tire Company, whose sign was still on the building. He also testified that in the block on the west side of Cathedral Street, from 1100 to 1130, there were two properties used exclusively as dwellings, two other property owners maintained shops in their dwellings, and the other properties include a china repair shop, a paint store, and a large vacant store. It is agreed that across the street, near the former Lee tire building, is a saloon, that on the northeast corner of Chase Street and Maryland Avenue, diagonally across the street from the proposed signs, a liquor store. There are no openings in the north wall of 1037 Cathedral Street, along which the signs would stand. The witness testified that in the west wall of the apartment house, which adjoins the vacant lot under consideration, there are five windows. He was mistaken. Actually, there are sixteen windows in the wall, and the parties later filed a stipulation so showing. No testimony was offered, either before the Board or in Court, to show that these were windows of sleeping quarters nor was the matter gone into in the stipulation. In the argument before us, counsel for the appellees stated that it is his understanding that the windows did no open on sleeping quarters. Counsel for the appellant did not contradict this statement, disclaiming actual knowledge. We were told also that the customary requirement is that the lights which illumine billboards be shaded and angled so that the light is concentrated on the billboard and not dissipated into the surrounding area, and that the illumination is turned off at 11:00 P.M.

This Court, on several occasions recently, has dealt with the law which controls the question before us. In *City of Baltimore v. Biermann*, 187 Md. 514, 522-523, the Board had denied a permit for a filling station, the procedure in such case being like that for billboards under the provisions of what are now Sections 37, 38 and 39 of the Ordinance. The Baltimore City Court had

reversed, and this Court reinstated the action of the Board, which had come about because two of the five members had voted against the granting of the permit, and under the Enabling Act and the Ordinance, the concurring vote of four members is required, where the Board acts, as it did there and in the case before us, in the exercise of original jurisdiction. In that case, many residents claimed that the proposed station would be a danger and hazard to some eleven hundred school children, ranging in age from five to eleven, who board a bus or trolley at the corner where the station was to be located. This Court, clearly recognizing that the Board was acting in a delegated legislative capacity, rather than as a *quasi* judicial body, held that where disapproval rested upon failure to obtain the necessary number of votes: "* * * the action cannot properly be described as that of a fact-finding body. In such circumstances it would be more accurate to say that approval is prevented by the exercise of a veto power. And negative action of this sort is clearly not entitled to the same weight, in considering the merits of a controversy, as a positive determination. * * * We hold that although the Board was precluded, by the adverse vote, from acting as a fact-finding body, this fact did not render its action a nullity, or open the question to unlimited review. The question before us is not whether there was substantial evidence before the Board to support a minority finding, but whether there was a reasonable basis in fact to support the refusal as an exercise of the police power. * * *

"Considering the action of the Board as an exercise of delegated legislative, or *quasi* legislative, power, the scope of review is different and in some respects more limited than where the action is *quasi* judicial; *e.g.*, the court must find that the result of the action is beyond the police power and deprives the applicant of property without due process of law. On this question the property owner has the heavy burden of overcoming the presumption of constitutionality of legislative action, even

if the legislative body acted without evidence at all."
On the record the Court, in the *Biermann* case, found
that: "* * * with regard to the peculiar hazard to school
children at this location and the large number of filling
stations in the vicinity, we hold that there was no lack
of reasonable support for a denial of the permit under
the police power."

In *Maryland Advertising Co. v. City of Baltimore*,
199 Md. 214, the Board denied an application to erect
a poster board in Baltimore City in a second commercial
use district. The Baltimore City Court affirmed on the
ground that the applicant had the burden of proof in
the appeal to show that the action of the Board was
arbitrary, unreasonable and unlawful, and that, in ad-
dition: "* * * the application was one which it would
be desirable to grant." This Court reversed, saying:
"A zoning statute, ordinance or administrative order,
as other actions in the exercise of the police power, is
presumed to be valid unless it is shown on its face or
by extrinsic facts to be invalid. * * * However, the duty
of the courts not to substitute their judgment for the
judgment of legislative or administrative authorities,
acting within their powers, is no more imperative than
the power and duty to set aside any purported exercise
of such power which is in fact arbitrary, capricious or
confiscatory. Zoning in this respect can no more escape
judicial review than any other purported exercise of the
police power. * * * When it is found that the decision
is not founded on the maintenance of the health, safety,
security, morals, and general welfare the action will be
set aside. * * * The action here, bearing no such relation,
was arbitrary and invalid, and should be reversed." See
also *Montgomery Co. v. Merlands Club, Inc.*, 202 Md. 279.
These cases recognize first, the proposition that an ap-
plicant for a billboard in a first or second commercial
use district, or industrial use district, is entitled to a
permit unless the Board finds from the evidence pro-
duced before it, or on investigation, that the proposed
use would endanger the public health, safety, security

or morals; and, second, that the action of the Board, affirmative or negative, is entitled to such respect by the courts that it will be set aside only if the attacker meets "the heavy burden of overcoming the presumption of constitutionality of legislative action" by showing that the action of the Board in the exercise of its original jurisdiction was arbitrary, capricious or illegal.

We find nothing in the record before us to show that the appellants came close to meeting the necessary requirements of overcoming the presumption that the Board acted properly. There is no evidence whatever that the public health, safety, security, welfare or morals would be adversely affected. The argument of the appellants that the erection of a billboard in a first commercial use district, in which there are residences, would lead to slums and, in this way, in the future affect adversely the public health or safety, is an argument that billboards should not be permitted at all in a district in which there are residences or substantial and attractive businesses, although it is zoned first commercial. Whatever the merits of this argument, it is one which should be addressed to the Legislature or the Baltimore City Council in an effort to have the law changed. As the law now stands, the argument is fanciful. The legislative branch of the government in allowing billboards to be erected in such areas, has said, in effect, that the likelihood that their presence will bring about the dire consequences foreseen by the appellant, is not great enough to forbid generally the use of property to accommodate them. It has added a safeguard for the instances contrary to the general rule in the procedures required by Sections 37, 38 and 39 of the Ordinance, whereby the Board, as a legislative agent, may determine in any particular instance that the public health, safety, welfare, security and morals will be adversely affected—not in the deterioration of the neighborhood over a period of time because of the presence of the billboards, but because of some immediate fact, circumstances or condition which would bring about the evils guarded against.

The appellants make much of the minor discrepancies in the opinion of the Board as to the use of the properties in the immediate area.

The errors could have had no effect on the findings of the Board because it is undisputed that the neighborhood not only is zoned commercial, but is, in fact, predominantly commercial, and none of the hazards or dangers which the law contemplates as justifying the forbidding of signboards in such a neighborhood, was present. Indeed, even if our scope of review were not as narrow as the cases we have cited and the Ordinance all show that it is, and we were applying the substantial evidence test, we would reach the same result. The action of the Board and the affirmance by the Baltimore City Court must be upheld.

*Order affirmed, with costs.*