620 A.2d 886

William H. MOSSBURG, Jr. et al.

v.

MONTGOMERY COUNTY, Maryland.

No. 84, Sept. Term, 1992.

Court of Appeals of Maryland.

March 10, 1993.

Joseph P. Blocher (David L. Cahoon, Todd D. Brown, Linowes and Blocher, all on brief), Silver Spring, for petitioners.

Norman G. Knopf (Dennis M. Cate, Knopf & Brown, all on brief), Washington, DC, Karen L. Federman Henry, Asst. County Atty., Rockville, for respondents.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ELDRIDGE, Judge:

The principal issue in this zoning case concerns the validity of a requirement that four out of the five members of the Montgomery County Board of Appeals approve an application for a special exception. The requirement, often referred to as a "supermajority" requirement, was enacted by the County Council of Montgomery County in its zoning ordinance, § 59–A–4.123 of the Montgomery County Code, and was embodied in a Board of Appeals' rule. It was not, however, expressly authorized by the General Assembly in the zoning enabling statute.

I.

On October 10, 1989, William H. Mossburg, Jr. filed an application for a special exception for a private solid waste

transfer station.[1] The property for which the application was sought is located along Southlawn Lane in Rockville, Maryland and is classified in the Heavy Industrial Zone, I–2.[2] A solid waste transfer station is permitted in the I–2 zone as a special exception use. § 59–C–5.21 of the Montgomery County Code (1984) ("zoning ordinance").

Pursuant to § 59–C–5.21 of the zoning ordinance, the site for a solid waste transfer station "[m]ust be included in the Comprehensive Solid Waste Management Plan for Montgomery County." On October 20, 1987, the Montgomery County Council adopted Resolution 11–499 and thereby amended the Solid Waste Plan specifically to include Mossburg's Southlawn property. The resolution authorized Mossburg to accept up to 400 tons of debris per day and also stated that "[t]he County supports this amendment to facilitate moving the operation to the new site."

The Montgomery County Board of Appeals conducted several days of hearings on January 25, March 8, 12, 15, 22, and 29, 1990.[3] Extensive testimony was received from

1. For many years prior to the special exception proceedings, Mossburg operated a junkyard on Travilah Road in Rockville, Maryland. Mossburg received three "Warning Notices of Violation" from Montgomery County alleging that he was operating a junkyard in violation of the Montgomery County Code. On March 22, 1984, Montgomery County and Mossburg entered into a Consent Order whereby it was agreed (1) that the Travilah Road site was a junkyard as defined by the County Code, (2) that Mossburg would relocate this facility by September 1985 and (3) that the County would cooperate with Mossburg's efforts to relocate the facility. The property which is the subject of the present dispute was purchased by Mossburg for the purpose of relocating his Travilah Road facility.

2. The Montgomery County Code characterizes heavy industrial uses, which "generally involve larger volumes of heavy truck traffic and are located near specialized transportation links such as rail and major highways," as "noisy, dusty, and dirty" and restricts such uses to the I–2 zone "because the large scale nature of such uses, the traffic impacts, and environmental effects could be disruptive to lighter intensity industrial and commercial areas." § 59–C–5.2 of the Montgomery County Code (1984).

3. In § 59–A–4.11 of the zoning ordinance, the County Council has designated the Board of Appeals as the agency to decide special

witnesses in support of, as well as in opposition to, the special exception. The record before the Board consisted of 1,498 pages of testimony and 160 exhibits. The Board then voted on the application. Three of the five members voted to grant the special exception with conditions, and two of the five members voted to deny the special exception.

On September 28, 1990, the Board formally issued its decision and denied the special exception application for failure to obtain the requisite supermajority under § 59–A–4.123 of the zoning ordinance.[4] The resolution denying the

exceptions "in accordance with § 2–112" of the Montgomery County Code. Section 2–112(a) of the Montgomery County Code provides that

"(1) ... [t]he board shall have and exercise the functions and powers of the board of zoning appeals ... as such functions and powers are prescribed in the Maryland–Washington Regional District Act, enacted by Chapter 992 of the Laws of Maryland, 1943, and any amendments thereto, and all references in the regional district act and zoning ordinance to the board of zoning appeals shall be construed to refer to the board created by this article. Upon the effective date of this article, the board of zoning appeals shall cease to exist.

"(2) *Petitions for special exceptions.* The board shall decide all petitions for special exceptions, except as otherwise provided in chapter 59 of this Code."

4. Section § 59–A–4.123 of the zoning ordinance provides in part:

"**Adoptions of Resolutions.** All decisions of the board shall be taken by written resolution. Each resolution shall contain a statement of the grounds and findings forming the basis for such decisions and the full text of the resolution and the record of the members' votes shall be incorporated into the minutes of the board. "All actions or decisions of the board except decisions on petitions to grant, deny, revoke, suspend, modify, amend or extend the time in which to implement a special exception shall require the affirmative vote of at least 3 members of the board. The affirmative vote of at least 4 members of the board shall be required to adopt a resolution granting, denying, revoking, suspending, modifying, amending or extending the time in which to implement a special exception; provided, that any member of the board voting on the resolution and not present for any portion of the hearing shall read and sign the transcript of that portion of the testimony given and shall review any and all exhibits introduced at the hearing. "If the concurrence of the necessary total of affirmative votes shall fail to be achieved for any reason, then the petition or application

application contained no findings of fact or conclusions of law. Each board member who voted to deny the application wrote a separate statement setting out his/her reason for denying the application. A third member of the board, who voted to approve the application, also submitted a statement.

Mossburg filed in the Circuit Court for Montgomery County the present action for judicial review of the Board's decision. Mossburg argued that the requirement in the zoning ordinance that four affirmative votes of the Board members were necessary to grant the special exception was invalid because it was not authorized by the General Assembly. Mossburg also argued that the denial of the special exception was invalid because the Board failed to make findings of fact and conclusions of law. Finally, Mossburg argued that the Board's decision was not based upon substantial evidence. The decision of the Board was defended by Montgomery County and several private entities and individuals.[5]

The circuit court sustained the validity of the four vote requirement, holding that the Maryland General Assembly in the Regional District Act, Code (1957, 1990 Repl.Vol., 1992 Cum.Supp.), Art. 28, § 8–110(a), authorized the County to adopt the supermajority requirement. The circuit court reasoned that because the denial of the special exception resulted from an "operation of law," no findings of facts or conclusions of law were required. Finally, the court held that the administrative record contained sufficient evidence to support the Board's decision. Therefore, the circuit

---

shall be held to be denied, or the action appealed from shall be held to be affirmed. ..."

**5.** The private entities and individuals include the Twin Lakes Citizens Association, other citizens associations, homeowners associations, homeowners and businesses located near the Southlawn Road property. They were parties before the Board of Appeals, the Circuit Court for Montgomery County, and the Court of Special Appeals, and are respondents in this Court. For convenience, we shall refer to them collectively as the "Twin Lakes Citizens Association" or simply the "Association."

court affirmed the decision of the Board denying the application for a special exception.

Mossburg appealed to the Court of Special Appeals. The intermediate appellate court, in an unreported opinion, affirmed the circuit court's judgment. The Court of Special Appeals held that § 5(U) of the Express Powers Act, Code (1957, 1990 Repl.Vol.), Art. 25A, § 5(U), authorized the supermajority requirement imposed by § 59–A–4.123 of the local zoning ordinance, that the Board's action in denying the application "by operation of law" was "quasi-legislative" and that, therefore, the Board was not required to provide Mossburg with findings of fact in support of its decision, and that the Board's decision was supported by substantial evidence and was fairly debatable.

Mossburg filed a petition for a writ of certiorari which this Court granted, 328 Md. 125, 613 A.2d 394.

Mossburg argues that the Regional District Act, rather than the Express Powers Act, is the source of the zoning authority in Montgomery County and the source of the authority to decide special exceptions. He also contends that a special exception proceeding authorized by the Regional District Act is adjudicatory and that, therefore, the Board of Appeals was acting in a quasi judicial, rather than quasi legislative, capacity. Mossburg goes on to argue that a local ordinance providing a supermajority requirement in an adjudicatory zoning matter, such as a special exception proceeding, is valid only if expressly authorized by the General Assembly in the zoning enabling statute. Since the Regional District Act does not expressly authorize a supermajority in a special exception proceeding, Mossburg concludes that the supermajority requirement is invalid.

Montgomery County concedes in this Court that its zoning authority comes from the Regional District Act only and concedes that the Court of Special Appeals mistakenly referred to the Express Powers Act as the source of Mont-

gomery County's zoning authority.[6] Nonetheless, the County argues that the Regional District Act authorizes the County to adopt a supermajority requirement for special exceptions. Because the Regional District Act grants broad authority to the County Council to establish zoning regulations, the County contends that the enactment of the supermajority requirement was a proper exercise of the legislative authority of the Montgomery County Council. Moreover, the County argues that the special exception proceedings before the Board have both quasi judicial and quasi legislative components and that when an application is denied because of the failure of the applicant to obtain a supermajority, the denial is by operation of law and no findings of fact are required. Finally, the County maintains that the Board's decision was fairly debatable, was supported by substantial evidence in the administrative record, and was not arbitrary or capricious.

The Twin Lakes Citizens Association also filed a brief and presented oral argument in this Court. The Association's arguments are essentially the same as Montgomery County's, although the Association contends that the Court of Special Appeals correctly held that the supermajority requirement is authorized by the Express Powers Act.

## II.

Article 25A, § 5, enumerates the express powers which "are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI–A" of the Maryland Constitution. Montgomery County is a charter county under Article XI–A of the Constitution. Section 5(U) of the Express Powers Act provides:

---

**6.** In fact, this has been the position of the County from the outset. At no time before the Circuit Court or before the Court of Special Appeals did Montgomery County contend that it derived its zoning authority from the Express Powers Act, Code (1957, 1990 Repl.Vol.), Art. 25A, § 5(U).

*"County Board of Appeals*

"To enact local laws providing (1) for the establishment of a county board of appeals whose members shall be appointed by the county council; (2) for the number, qualifications, terms, and compensation of the members; (3) for the adoption by the board of rules of practice governing its proceedings; and (4) for the decision by the board on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board of such of the following matters arising ... under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception...."

The Court of Special Appeals reasoned that because the Express Powers Act provides for the creation of a county board of appeals which may adopt "rules of practice governing its proceedings," the Act authorized the supermajority requirement in the zoning ordinance.

■ The Express Powers Act authorizes a county to have a board of appeals. The zoning authority, however, comes from the zoning enabling act which, in the present case, is the Regional District Act. The Regional District Act is the exclusive source of zoning authority in Montgomery County. As Chief Judge Murphy stated for this Court in *Chevy Chase View v. Rothman*, 323 Md. 674, 685, 594 A.2d 1131, 1136 (1991):

"[It is] clear that the Regional District Act is now the exclusive source of zoning authority in Montgomery County and that any enactment concerning zoning in the county, which is at variance with the Regional District Act, is inoperative within the district. Thus, the Express Powers Act, Code, Article 25A, § 5(X), authorizing chartered counties to enact laws relating to zoning and planning, has no application in Montgomery County, see § 5 of ch. 70 of the Acts of 1975, as long as the Regional District Act remains in force and effect."

*See also Northampton v. Prince George's County,* 273 Md.
93, 96, 327 A.2d 774, 776 (1974); *Prince George's County v.
Maryland–Nat'l. Capital Park and Planning Comm'n,*
269 Md. 202, 225–226, 306 A.2d 223, 226, *cert. denied,* 414
U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).

■ Consequently, the Court of Special Appeals erred in
holding that Montgomery County was authorized by § 5 of
the Express Powers Act to enact a supermajority require-
ment for the approval of a special exception.

### III.

The question remains, however, whether the Regional
District Act authorizes Montgomery County to adopt a
supermajority requirement for special exceptions. Section
8–110 of the Regional District Act, Art. 28, provides in
relevant part as follows:

"(a) A district council in either county, in its zoning
regulations, may provide that the board of zoning ap-
peals, the district council, or an administrative office or
agency designated by the district council, in appropriate
cases and subject to appropriate principles, standards,
rules, conditions, and safeguards set forth in the regula-
tions, may either grant or deny, upon conditions as may
be deemed necessary to carry out the purposes of this
article, special exceptions and variances to the provisions
of the zoning regulations in harmony with their general
purposes and intent....

"(b) In Montgomery County, notwithstanding any provi-
sion in Article 25A, § 5(U), of the Annotated Code to the
contrary, a decision by the county board of appeals on
applications for zoning variances or exceptions may be
appealed within 30 days by any person, municipality,
corporation, or association, whether or not incorporated,
which has appeared at the hearing in person, by attorney,
or in writing, to the circuit court for the county, which
may affirm or reverse the decision appealed from or
remand it to the board for further consideration for any
reason, or dismiss the appeal as provided by law. Any

party to the proceedings in the circuit court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this section are exclusive."

The language of § 8–110 does not expressly state that a county may require a supermajority in special exception cases.

Nevertheless, the County and the Twin Lakes Citizens Association rely on several cases decided by this Court upholding supermajority requirements. This reliance is misplaced, as the cases in this Court upholding supermajority requirements have done so when the supermajority was expressly authorized by the General Assembly.

The leading case is *Mayor and City Council of Baltimore v. Biermann,* 187 Md. 514, 50 A.2d 804 (1947). In *Biermann,* the applicant applied for a permit to construct a filling station in Baltimore City. Section 7 of the zoning enabling act for Baltimore City then provided that "[t]he concurring vote of four members of the board" was necessary for the board to approve an application for a filling station. 187 Md. at 519, 50 A.2d at 806. Two members of the five member board in *Biermann* voted against the approval of the application, and this Court upheld the supermajority requirement. The supermajority provision applied by the board in *Biermann,* however, was required by the General Assembly in the enabling statute. It was not simply a product of the City's zoning ordinance. Moreover, in *Biermann* "[n]o attack was made upon the validity of the Enabling Act ... under which the Board acted." 187 Md. at 521, 50 A.2d at 808. *See also Prince George's County v. McBride,* 268 Md. 522, 302 A.2d 620 (1973) (supermajority required by the General Assembly in a public local law); *Adler v. City of Baltimore,* 220 Md. 623, 629, 155 A.2d 504, 507 (1959); *Gilmor v. Mayor and City of Baltimore,* 205 Md. 557, 563, 109 A.2d 739, 742 (1954) (the Court specifically noted that the supermajority in the *Biermann* case, as well as in the *Gilmor* case, was required by the General Assembly in the enabling act).

No case has been called to our attention in which this Court has upheld a supermajority requirement imposed by a county or Baltimore City without express authorization from the General Assembly in the pertinent zoning enabling statute.

Despite the prior decisions of this Court, Montgomery County and the Association argue that the provision in § 8–110(a) of the Regional District Act, authorizing the County to adopt regulations concerning special exceptions, impliedly grants authority to adopt a supermajority requirement. When considered in the context of the Regional District Act as a whole, we do not believe that this general authorization to adopt regulations constitutes implicit authority to require a supermajority.

■ There are instances in the Regional District Act, as well as in other zoning enabling statutes, where the General Assembly has specifically addressed the ability of local governments to designate the number of votes required. For example, the Regional District Act expressly authorizes a county, when amending its regulations, including the zoning maps, to adopt procedures which specify the "number of votes required to enact amendments and variations or increases therein...." Art. 28, § 8–104(a). The General Assembly has also provided for a supermajority in the Regional District Act when an applicant seeks "a zoning classification other than that which is indicated to be appropriate or suitable in the text or on the land use map of an adopted master plan." § 8–104(b). Other zoning enabling statutes have expressly authorized a supermajority in specific circumstances. *See, e.g.,* Code (1957, 1988 Repl.Vol., 1992 Cum.Supp.), Art. 66B, §§ 2.08(h), 3.08. Provisions such as these indicate that where the General Assembly has intended to authorize a supermajority requirement, it has done so expressly. This Court has regularly held that where the Legislature in a statute expressly authorizes a particular action under certain circumstances, the statute ordinarily should be construed as not allowing the action under other circumstances. *See, e.g., Office & Prof. Em-*

*ployees Int'l v. MTA,* 295 Md. 88, 96, 453 A.2d 1191, 1195 (1982); *Montgomery v. State,* 292 Md. 155, 162–163, 438 A.2d 490, 493 (1981); *In re Appeal No. 653,* 277 Md. 212, 218, 352 A.2d 845, 849 (1976).

There are additional reasons for rejecting Montgomery County's and the Association's argument that the Regional District Act impliedly authorizes a supermajority requirement for the Board of Appeals to grant a special exception.

■ An application for a special exception involves a particular applicant's request for administrative authorization to engage in a specific activity at a specific location. The administrative proceeding determines the rights and obligations of the applicant with respect to the utilization of a parcel of property owned by him, and the effects of that utilization upon certain others who may be aggrieved. Consequently, a special exception administrative proceeding is clearly adjudicatory or quasi judicial. *See, e.g., Medical Waste v. Maryland Waste,* 327 Md. 596, 610, 612 A.2d 241, 248 (1992); *Sugarloaf v. Waste Disposal,* 323 Md. 641, 670, 594 A.2d 1115, 1127 (1991); *Mont. Co. v. Woodward & Lothrop,* 280 Md. 686, 712, 376 A.2d 483, 497 (1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769 (1978); 1 Davis, *Administrative Law Treatise,* § 7.02 (1958). As pointed out in Anderson, *American Law of Zoning,* § 21.17 at 706–708 (3d ed. 1986), an administrative agency "entrusted with authority to grant or deny special permits exercises a quasi-judicial function. . . . [It] has no legislative authority."

■ Since a special exception administrative proceeding is adjudicatory, it is subject to full judicial review. *Medical Waste v. Maryland Waste, supra,* 327 Md. at 610, 612 A.2d at 248, and cases there cited. The cases in this Court involving applications for special exceptions, both under the Regional District Act and under other zoning enabling statutes, have consistently viewed the administrative proceedings as adjudicatory, with the right of cross-examina-

tion, the necessity for findings of fact and conclusions of law, etc., and have treated the administrative decisions as subject to full judicial review. *See, e.g., Harford County v. Preston,* 322 Md. 493, 503–505, 588 A.2d 772, 778 (1991); *Schultz v. Pritts,* 291 Md. 1, 11, 432 A.2d 1319, 1323–1324 (1981); *Sembly v. County Bd. of Appeals,* 269 Md. 177, 182–184, 304 A.2d 814, 817–819 (1973); *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A.2d 289 (1967); *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A.2d 294 (1966). Moreover, the Regional District Act itself, in § 8–110(b), provides that the decision of the Board of Appeals on an application for a special exception is subject to judicial review.

It is difficult to reconcile a supermajority requirement with an adjudicatory administrative proceeding and normal judicial review. For example, we have held that the decision of a Board of Appeals in a special exception proceeding must be reversed where the Board failed to make findings of fact resolving a particular conflict. *Harford County v. Preston, supra,* 322 Md. at 503–505, 588 A.2d at 777–778. In *Preston,* Judge Karwacki for the Court explained that the "requirement" of "specific written findings of fact and conclusions of law" is

"in recognition of the fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings. In a judicial review of administrative action the court may only uphold the agency order if it is sustained by the agency's findings and for the reasons stated by the agency. *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 231, 567 A.2d 929, 935 (1990); *Baltimore Heritage v. City of Baltimore,* 316 Md. 109, 113, 557 A.2d 256, 258 (1989); *United Steelworkers v. Beth. Steel,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984); *Turner v. Hammond,* 270 Md. 41, 55–56, 310 A.2d 543, 551 (1973);

> *Pistorio v. Zoning Board,* 268 Md. 558, 570, 302 A.2d 614, 619 (1973)."

322 Md. at 505, 588 A.2d at 778.

Where there is a supermajority requirement, however, and where (as in the case at bar) a majority but not a supermajority of the Board of Appeals votes to grant an application, there will usually be no findings of fact or conclusions of law setting forth the basis for the agency's denial. Furthermore, the settled principle that an agency's decision will be judicially reviewed only on the grounds relied upon by the agency cannot be adhered to under such circumstances. In addition, while there may be in a particular case substantial evidence supporting the denial of an application on a certain ground, such ground may not have been the basis for the minority votes. In fact, the two minority members might not agree with each other.

In light of the inherent difficulty of reconciling a supermajority requirement with an adjudicatory administrative proceeding and judicial review, authorization for a supermajority requirement in such a proceeding should be clearly set forth by the General Assembly. It should not be implied from a general authorization to adopt rules and regulations.

■ Consequently, we hold that Montgomery County was not authorized by the Regional District Act to impose the supermajority requirement for the grant of a special exception. Thus we do not reach any of the other grounds for reversal urged by the petitioner Mossburg.

■ Although we shall direct that the Board of Appeals' decision be vacated, it would not be appropriate for us to direct that the application be granted. While a majority of the Board of Appeals voted to grant the application for a special exception with conditions, there were no findings of fact and conclusions of law filed by the majority. Moreover, the denial of the application, because of the supermajority requirement, resulted in a decision favorable to the Association and deprived the Association of any right to

seek judicial review of the three-member majority vote in favor of the application. Under all of the circumstances, the case should be remanded to the Board of Appeals for that agency to reach a new decision, to be arrived at by a simple majority, with appropriate findings of fact and conclusions of law. Whether or not the new decision is based entirely on the existing record, or whether the parties will be permitted to introduce new evidence to supplement the record, should be in the discretion of the Board of Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH DIRECTIONS TO VACATE THE DECISION OF THE BOARD OF APPEALS AND TO REMAND THE CASE TO THE BOARD OF APPEALS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.