Dear Mayor Grimes:
You have requested our opinion on the law governing recusal of a member of the Board of Aldermen for the City of Frederick who is a decision maker in a quasi-judicial proceeding. Specifically, you ask if the member is required to recuse himself or herself, to quote your letter, "from participating in any discussion, consideration, deliberation and vote on a matter on which the public official has already publicly stated his or her opinion and decision in advance of hearing the facts and evidence in the case." You also ask if the Board of Aldermen has the authority to disqualify a member from participating in a quasi-judicial proceeding if a majority of the board concludes that the member has prejudged the matter.
Our opinion is as follows: Although the concept of "prejudgment" ordinarily has no legal significance for a legislator, when a legislator is a decision maker in a quasi-judicial proceeding, the legislator is subject to the standards applicable to that kind of proceeding. Accordingly, a member of the Board of Aldermen should not participate as a decision maker in a quasi-judicial proceeding if the member has prejudged the specific matters at issue in the proceeding. Also, the board itself has the authority to disqualify a member for prejudgment.
 I Background
The legal issues that you present arise from a meeting of the Mayor and Board of Aldermen for the City of Frederick on July 23, 1997. At that session, the Mayor and Board of Aldermen convened to review the recommendation of the City's Personnel Board on the employment status of a City employee, an administrator at a City arts center.
As we understand the situation, the employee was terminated for alleged violations of the City's personnel regulations. The employee then appealed her termination to the City's Personnel Board, which held a hearing on the appeal. Under § 129(c) of the Frederick City Charter, the Personnel Board "report[s] . . . its findings and recommendations" to the Mayor and Board of Aldermen. The July 23 meeting was to consider the Personnel Board's recommendation that the employee be reinstated. The City agency that had terminated the employee opposed this recommendation.
The Deputy City Attorney, representing the City agency, submitted a motion for an Alderman to recuse herself from any participation in the Board's decision making. The basis for the motion was alleged bias and prejudgment — that certain statements alleged to have been made by the Alderman prior to the July 23 hearing evidenced her inability to decide impartially about the Personnel Board's recommendation, based on the evidence and other material on the record. When the Alderman declined to recuse herself, the Board then disqualified her from participation in its consideration of the matter.
Your questions do not call on us to assess the statements made by the Alderman and their context, so that we might decide independently whether they evidence the bias and partiality alleged by the Deputy City Attorney in the recusal motion. We would not do so in any event, for an opinion of the Attorney General is not a forum in which a factual record is assembled and, on that basis, the propriety of a local elected official's comments judged. Instead, we limit ourselves to the legal questions posed: the distinction between legislative and quasi-judicial roles, the standards for recusal in a quasi-judicial proceeding, and the authority of an elected body to disqualify one of its members in a quasi-judicial proceeding when the body determines that the member has prejudged the matter.
 II The Board's Role — Legislative or Quasi-Judicial?
The premise of your opinion request is that the members of the Board of Aldermen were "acting in a quasi-judicial capacity" when they met to consider the Personnel Board's recommendation. This premise warrants careful scrutiny, because, as we explain in Part III below, the concept of "prejudgment" has no legal significance if a legislator is performing a legislative, as distinct from a quasi-judicial, role.
"Not all actions undertaken by local governmental bodies that have legislative responsibilities are necessarily `legislative.'"Roberson v. Mullins, 29 F.3d 132, 134 (4th Cir. 1994) (legislative immunity not available in suit over county board's termination of employee). As the Fourth Circuit pointed out in another legislative immunity case, "Local government bodies often undertake actions in different capacities, including executive, administrative, legislative, and even judicial." Alexander v.Holden, 66 F.3d 62, 65 (4th Cir. 1995).
Even within a particular field — here, personnel decision making — a local legislative body may act in different capacities. "Almost all budget decisions," for example, "have an effect on employment by either creating or eliminating positions or by raising or lowering salaries. This reality, however, does not transform a uniquely legislative function into an administrative one." Rateree v. Rockett, 852 F.2d 946, 950 (7th Cir. 1988).[1] "If the underlying facts on which the decisions are based are legislative facts, such as generalizations concerning a policy or state of affairs, then the decision is legislative."Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984) (citations and internal quotation marks omitted). In addition, "a legislative body's discipline of one of its own members is a core legislative act. . . ." Whitener v. McWatters, 112 F.2d 740, 741 (4th Cir. 1997).
When a legislative body decides whether to fire a particular employee, however, it is not engaged in a legislative function.See Whitener v. McWatters, 112 F.3d at 742; Alexander v. Holden,66 F.3d at 66. In a termination proceeding, facts are adjudicated to determine the rights and obligations of particular parties. The proceeding, therefore, is adjudicatory or "quasi-judicial." Mossburg v. Montgomery County,329 Md. 494, 506, 620 A.2d 886 (1993).[2]
"[A] board or department, especially the council, may be clothed with quasi-judicial power to remove municipal officers." 4 Charles R. P. Keating and J. Jeffrey Reinholtz, McQuillanMunicipal Corporations § 12.233, at 380 (3d ed. 1992). That is the role assigned to the Board of Aldermen by § 129 of the Frederick City Charter. To be sure, the Board of Aldermen did not itself hear witnesses. It was, however, the final decision maker in an adjudicatory proceeding. Hence, its role, like that of the Personnel Board, was quasi-judicial.[3] The choice of a quasi-judicial process implies that the legal standards customarily applicable to that process are to be followed.
 III Standards for Recusal
When a member of the Board of Aldermen acts in a legislative capacity, the member is allowed and even expected to "prejudge" the merits of a pending proposal. A legislator generally is free to make up his or her mind about an issue long before the vote and on the basis of whatever information the legislator deems pertinent. Those who think that the legislator's decision making is flawed, in its method or outcome, have but one remedy: at the ballot box. A legislator is also free to say what he or she wishes, as part of the legislative process, subject only to censure by the legislative body (and, ultimately, the judgment of the voters). See Whitener v. McWatters, 112 F.3d at 743-44.
Nevertheless, when an elected official holds an office that has quasi-judicial functions, the elected official must comply with the legal requirements that attach to that aspect of the office. One such legal requirement is that a decision maker who exercises judicial or quasi-judicial powers is under a duty to be fair and make an impartial decision based on the facts and the law in each case. This requirement, "essential to the administration of justice," applies to any public body that exercises judicial or quasi-judicial authority. Board of Medical Examiners v. Steward,203 Md. 574,581-82, 102 A.2d 248 (1953). So, for example, the Court of Special Appeals recently suggested that "[p]ersonal bias or prejudice" might disqualify a member of a county council from participating in an adjudicatory proceeding. Colao v. PrinceGeorge's County, 109 Md. App. 431, 467, 675 A.2d 148 (1996), aff'd346 Md. 342 (1997). See also, e.g., Montgomery County Board ofAppeals v. Walker, 228 Md. 574, 580-81, 180 A.2d 865 (1961) (public official must perform duties with "complete fidelity" and must not have any personal bias or prejudice in the outcome of a case).[4] Cf. Maryland Rule 16-813 (recusal of judge whose "impartiality might be questioned" on the basis of personal bias or prejudice); COMAR 28.02.01.08 (recusal of administrative law judge for personal bias or any reason that renders the judge unable to make an impartial decision).[5]
Impartiality does not imply the absence of a point of view, even one expressed before the adjudication is over. As Judge Jerome Frank once wrote, "If `bias' and `partiality' be defined to mean the total absence of preconceptions . . . then no one has ever had a fair trial and no one ever will. The human mind . . . is no blank piece of paper. . . . Interest, points of view, preferences, are the essence of living." In re Linahan, 138 F.2d 650, 651-52
(2d Cir. 1943). So, for example, a federal judge's "remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases . . . do not support a bias or partiality challenge . . . [unless] they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540,554 (1994) (applying statutory provision on disqualification of federal judges for "personal bias or prejudice"). Similarly, an adjudicatory decision maker is free to participate in a proceeding even with stated policy predispositions: a "strong conviction or a crystallized point of view on questions of law and policy are not grounds for disqualification." American Cyanamid Co. v. FTC,363 F.2d 757, 764 (6th Cir. 1966) (internal quotation marks omitted). As the Supreme Court summarized the point, a decision maker is not disqualified "simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances."Hortonville Joint School District No.1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 493 (1976) (citations and internal quotation marks omitted).[6]
As the Hortonville decision implies, the line of disqualifying prejudgment is crossed if, while the case is pending, the decision maker announces a judgment about adjudicative facts — "issues of who did what, where, when, how, why, and with what motive or intent." 2 Kenneth Culp Davis and Richard J. Pierce, Jr., Administrative Law Treatise § 9.8, at 78 (3d ed. 1994). For example, in Cinderella Career and FinishingSchools, Inc. v. FTC, 425 F.2d 583 (D.C. Cir. 1970), the chairman of the FTC was disqualified because he had delivered a speech in which he denounced as deceptive the very advertising that was the subject of a pending FTC adjudication. These public comments, the court observed, "give the appearance that he had already prejudged the case and that the ultimate determination of the merits will move in predestined grooves." 425 F.2d at 590.
 IV Board's Recusal Authority Over Its Members
Nothing in the Frederick City Charter, ordinances, or rules of the Board of Aldermen specifically mentions the recusal of members for bias in a quasi-judicial proceeding.[7]
Nevertheless, in our opinion this power exists under the board's general authority to have "all powers possible . . . under the Constitution and the laws of the State of Maryland as fully and completely as though they were specifically enumerated in the Charter." Article V, § 35-B of the Charter.
For the reasons stated in Part III above, a quasi-judicial process requires that decisions be made without the participation of an official who has prejudged a case. If a public body lacked the power to prevent this participation, it would be frustrated in the conduct of its quasi-judicial business, because a decision in which a biased decision maker participates may be challenged. SeeMontgomery County v. Walker, 228 Md. at 580-81. See also Pratt v.Mayor Council, 89 A.2d 1 (N.J. 1942) (decision in a quasi-judicial proceeding is void when member has personal interest in the case); Meixell v. Borough Council, 88 A.2d 594
(Pa. 1952) (vote of biased council member does not count). Seegenerally Mason's Manual of Legislative Procedure XIV (1989) (to be valid, a public body's decision must not violate any law). Since the Board of Aldermen has "all powers possible" under State law in furtherance of its explicit duty to sit as final decision maker in a quasi-judicial proceeding, the board has the implied power to disqualify any member who has prejudged a quasi-judicial proceeding.
 V Conclusion
As we noted at the outset, we are not going to sit in judgment of the statements and actions of the Alderman or the correctness of the board's decision to disqualify her. Whether disqualifying personal bias or prejudgment is present "is a factual question and is governed by the circumstances of the case." Walker, 228 Md. at 180. For example, to the extent that the Alderman's comments reflected policy judgments about the running of an arts center or the right qualifications of its administrator, the comments were not disqualifying. If her comments, however, reflected an already settled view of the particular points to be adjudicated in the personnel hearing process, the comments were disqualifying. A majority of the Board of Aldermen evidently concluded that the latter was the case, and the board had the legal authority to act on that conclusion by disqualifying her.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
 Craig A. Nielsen Assistant Attorney General
[1] If a legislative act is pretextual, a mere facade for a focused effort to discharge an employee, the act may be deemed not legislative, at least for purposes of legislative immunity.Scott-Harris v. City of Fall River, 36 Fed.R. Serv. 3d 1150 (1st Cir.), cert. granted sub nom. Bogan v. Scott-Harris,117 S. Ct. 2430 (1997); Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20 (1st Cir. 1992).
[2] That a member of the legislative body votes on the decision does not change the analysis: "A [local legislator] does not necessarily act in a legislative capacity when his participation in the action of the body takes the form of a vote; the action of the body must itself be legislative to make the member's act of voting legislative." Roberson v. Mullins,29 F.3d at 134 n. 3.
[3] The role of the Board of Aldermen is analogous to that of a State agency that hears exceptions to the proposed findings, conclusions, and order of an administrative law judge. See
§ 10-220 of the State Government Article, Maryland Code.
[4] The standards for prejudgment in a quasi-legislative, as distinct from a quasi-judicial, administrative proceeding are discussed in Fogle v. H G Restaurant, Inc., 337 Md. 441, 462,654 A.2d 449 (1995). See also Association of Nat'l Advertisers v.FTC, 627 F.2d 1151 (D.C. Cir. 1979).
[5] An adjudicator's bias or prejudgment may give rise to an individual's claim of a violation of the Due Process Clause of the Fourteenth Amendment. We note, however, that a municipality may not claim rights under the Fourteenth Amendment. Newark v.New Jersey, 262 U.S. 192, 196 (1923). We were not asked, any therefore have not considered, whether any source of law affords a municipality a cognizable claim of injury if an adjudicatory decision maker were biased against it.
[6] Nor is prior knowledge of the facts of a case disqualifying. Id. See also Pruitt v. Howard County Sheriff'sDep't, 96 Md. App. 60, 78, 623 A.2d 696, cert. denied, 332 Md. 143
(1993).
[7] Article II, § 15 of the Frederick City Charter authorizes the Board of Aldermen to "expel a member . . . for . . . [a] violation of its rules." No rule violation was at issue, however.
 *Page 102