657 A.2d 1163

PAN AMERICAN HEALTH ORGANIZATION

v.

MONTGOMERY COUNTY, Maryland; County Council for Montgomery County.

Misc. No. 30, Sept. Term, 1994.

Court of Appeals of Maryland.

May 11, 1995.

John J. Delaney (David L. Cahoon, Elizabeth M. Hosford, Linowes and Blocher, Silver Spring, J. Thomas Lenhart, Deborah B. Baum, Shaw, Pittman, Potts & Trowbridge, Washington, DC, on brief), for appellant.

A. Katherine Hart, Sr. Asst. County Atty. (Marc P. Hansen, Acting County Atty., Edward B. Lattner, Asst. County Atty., Rockville, all on brief), for appellee.

James H. Hulme, Christopher Van Hollen, Jr. and Helen L. Gemmill, Arent Fox Kintner Plotkin & Kahn, on brief, Washington, DC, for amicus curiae.

Argued before ELDRIDGE, RODOWSKY, KARWACKI, BELL and RAKER, JJ., JOHN F. McAULIFFE, Judge (Retired), Specially Assigned, and THEODORE G. BLOOM, Judge of the Court of Special Appeals, Specially Assigned.

RAKER, Judge.

The United States Court of Appeals for the Fourth Circuit, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol., 1993 Cum. Supp.) §§ 12–601 to 12–609 of the Courts and Judicial Proceedings Article, and Maryland Rule 8–305, has certified the following question to this Court:

> Whether the County Council for Montgomery County, sitting as the District Council, had the authority under state law to enact zoning legislation that had the effect of prohibiting the Pan American Health Organization ("PAHO") from locating its headquarters in a residentially-zoned area in Montgomery County.

This case arises out of PAHO's attempt to relocate its headquarters from Washington, D.C., to residentially zoned property in Chevy Chase, in Montgomery County, Maryland. After PAHO entered into a purchase agreement for a parcel in Chevy Chase, Montgomery County enacted Zoning Text Amendment No. 93014. The Zoning Text Amendment effectively blocked PAHO from locating its headquarters on the parcel it had selected.

PAHO filed this action in the United States District Court for the District of Maryland, naming Montgomery County and the County Council as defendants and seeking to invalidate the Zoning Text Amendment on various state and federal

grounds. The District Court granted summary judgment in favor of the County. PAHO appealed, and the Fourth Circuit certified to this Court the question of law quoted above. We answer the certified question in the affirmative.

## I.

### A.

In order to understand the facts of this case, it is necessary to examine the zoning authority of Montgomery County. Montgomery County is a charter county under the Home Rule Amendment. *See* MD. CONST. art. XI–A. Section 5 of Maryland Code (1957, 1990 Repl.Vol., 1993 Cum.Supp.) Article 25A, known as the Express Powers Act, enumerates the powers that are granted to and conferred upon any county that forms a charter under the provisions of the Home Rule Amendment.

Montgomery County's zoning power, however, derives exclusively from the Regional District Act. *Mossburg v. Montgomery County, Md.*, 329 Md. 494, 502, 620 A.2d 886, 890 (1993); *Chevy Chase View v. Rothman*, 323 Md. 674, 685, 594 A.2d 1131, 1136 (1991). The Act, enacted in 1939 and currently codified in Article 28 of the Maryland Code, creates the Regional District, which now encompasses all of Montgomery County and most of Prince George's County. Maryland Code (1957, 1990 Repl.Vol., 1993 Cum.Supp.) Art. 28, § 7–103.[1]

The Regional District Act establishes two mechanisms for land use planning. The first mechanism is through zoning. Under the Regional District Act, the county councils of Montgomery and Prince George's Counties each serve as "the district council for that portion of the regional district lying within [the] county." Art. 28, § 8–101(a). Each district council "may by ordinance adopt and amend the text of the zoning ordinance and may by resolution or ordinance adopt and amend the map or maps accompanying the zoning ordinance text." *Id.* § 8–101(b)(2). Thus, the Montgomery County

---

1. Unless otherwise indicated, all statutory citations herein are to Maryland Code (1957, 1990 Repl.Vol., 1993 Cum.Supp.) Art. 28.

Council has been designated as the District Council and has broad authority to adopt and amend the text of the zoning ordinance to regulate "the location and uses of buildings and structures." Art. 28, § 8–101(b)(2)(v).

The second mechanism is known as the mandatory referral process. Under the Regional District Act, the Maryland–National Capital Park and Planning Commission ("M–NCPPC") is empowered to adopt "a general plan for the physical development of the [Regional] District." 1939 Maryland Laws ch. 714, § 4, at 1489 (codified as amended at Art. 28, § 7–108). Section 7–112 of Article 28 (the "mandatory referral provision") provides that proposals for certain public projects shall be referred to the M–NCPPC for non-binding review. The statute states in pertinent part:

> [N]o road, park, or other public way or ground, *no public (including federal) buildings or structures,* and no public utility, whether publicly or privately owned, shall be located, constructed, or authorized in the regional district until and unless the proposed location, character, grade, and extent thereof has been submitted to and approved by the [M–NCPPC]. In case of disapproval, the [M–NCPPC] shall communicate its reasons to the State, federal, county, municipal, or district board, body, or official proposing to locate, construct, or authorize such public way, ground, building, structure, or utility. Thereupon the board, body, or official in its discretion may overrule the disapproval and proceed.

Art. 28, § 7–112 (emphasis added).

With this statutory framework in mind, we now turn to the specific facts of this case.

## B.

PAHO was created in 1924 by the Pan American Sanitary Code Treaty to promote and coordinate certain public health related activities in the Western Hemisphere. PAHO now serves as the Regional Office of the World Health Organization and the Specialized Organization for Health of the Orga-

nization of American States. The membership of PAHO is composed of thirty-eight countries, including the United States, which is a charter member of PAHO, its host nation, and the source of sixty percent of its funding. In 1960, PAHO was designated a "public international organization" pursuant to the International Organizations Immunities Act, 22 U.S.C. §§ 288–288j (1988 & Supp. V 1993). Exec. Order No. 10,864, 3 C.F.R. 398 (1959–1963).

In 1990, PAHO began looking for a new site for its headquarters, which is currently located in the District of Columbia. During this search, Thomas M. Tracy, PAHO's Chief Administrator, wrote to Montgomery County Executive Neal Potter, informing him that PAHO was considering a move to the County and seeking "the County's concurrence that PAHO's proposed headquarters would be permitted in ... residential zones." Tracy characterized PAHO as a "publicly owned or publicly operated use" under Montgomery County Code § 59–C–1.31(d) (1994), which allows such uses without restriction in residential zones.

As a result of Tracy's letter and additional contacts between PAHO and the County, Joyce R. Stern, then Montgomery County Attorney, sent a memorandum to the director of the Montgomery County Department of Environmental Protection, concluding that "PAHO may develop its new building in Montgomery County without regard to zoning restrictions on use." PAHO was informed of Stern's conclusion. Robert W. Marriott, Jr., Director of the M–NCPPC, also wrote to PAHO, indicating that its headquarters would not be subject to the County zoning laws. In August 1993, PAHO entered into a purchase agreement for 18.5 acres of residentially zoned land in Chevy Chase, at the southeast corner of the intersection of Connecticut Avenue and Jones Bridge Road.

On September 21, 1993, three members of the Montgomery County Council, sitting as the District Council for Montgomery County, introduced the Zoning Text Amendment "for the purpose of controlling the location and development of new, expanded or relocated facilities for Foreign Missions and International Organizations." The Zoning Text Amendment

defined the terms "Chancery," "Embassy," "Foreign Mission," and "International Organization," and declared that such facilities are "not . . . publicly owned or publicly operated use[s] for purposes of [the Montgomery County Zoning Ordinance]." Under the Zoning Text Amendment, international organizations are considered "primarily office uses" and are not permitted in residential zones. The Zoning Text Amendment was enacted on November 30, 1993, by the County Council and became effective on that date.

Aggrieved by its inability to develop the subject site as planned, PAHO filed a federal suit alleging that the Zoning Text Amendment was invalid because the County lacks zoning authority over public international organizations. PAHO claimed that its facility was a public building within the meaning of the Regional District Act, and thus would be subject to mandatory, non-binding referral under § 7–112, not County zoning laws.[2]

On cross-motions for summary judgment, United States District Judge Deborah K. Chasanow ruled in favor of the County on all counts. Judge Chasanow held that "the enabling legislation authorizing the District Council for Montgomery County to adopt regulations concerning zoning and land use authorizes the [Zoning Text Amendment] despite its impact on public international organizations." *Pan American Health Organization v. Montgomery County, Md.,* 889 F.Supp. 234, 241 (D.Md.1994). PAHO noted its appeal to the United States Court of Appeals for the Fourth Circuit. After oral argument, the Court of Appeals filed an Order of Certification with this Court.

## II.

PAHO makes two arguments in support of its position that the County lacked the power to enact the Zoning Text Amend-

---

2. PAHO also alleged that the Zoning Text Amendment violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights and impermissibly interferes with federal authority to regulate foreign relations.

ment.  First, PAHO contends that, under the precedents of this Court interpreting the Regional District Act and similar statutes, Montgomery County lacks the power to apply its zoning laws to public international organizations, because the State has not expressly authorized the County to exercise such power.  Second, PAHO contends that the Zoning Text Amendment is preempted by § 7–112, which establishes the mandatory referral process for public buildings.

We hold that Montgomery County has the power to enact zoning restrictions that apply to international organizations and that Maryland law does not confer on PAHO any immunity from such restrictions.

### III.

PAHO's first argument is that Montgomery County lacks the power to regulate the land use decisions of public international organizations because the Regional District Act does not specifically authorize the County to exercise power over such organizations.  We find no merit in this argument.

In the more general form of this argument, PAHO urges that the County cannot impose any zoning restrictions that are not specifically provided for in the Regional District Act; thus, because the Regional District Act does not expressly authorize the zoning of international organizations, the County lacks power to enact such zoning.  This argument is based on our decision in *Mossburg v. Montgomery County, Md.,* 329 Md. 494, 620 A.2d 886 (1993), which involved the County's super-majority requirement for the granting of special exceptions to the zoning ordinance.  *See* Art. 28, § 8–110.  We held that this requirement was invalid because it was not expressly authorized by the Regional District Act.  *Mossburg,* 329 Md. at 508, 620 A.2d at 893.

We do not regard this case as analogous to *Mossburg.*  The dispute in *Mossburg* concerned the procedural rules established by Montgomery County for exercising a portion of its zoning power, not the scope of the power itself.  Noting that a supermajority requirement was explicitly authorized or man-

dated in other parts of the Regional District Act, we concluded that the General Assembly did not intend to permit a super-majority requirement where it did not expressly address the subject. *Id.* at 505, 620 A.2d at 892.

This case, by contrast, involves the State's general delegation of zoning power to the County. The relevant statute, § 8–101 of Article 28, does not identify the individuals and entities that will be subject to the County's zoning laws. In this situation, if public international organizations were exempt from zoning because they are not specifically mentioned in § 8–101, then everybody would be exempt.

■ In the second, more specific version of this first argument, PAHO asserts that the exercise of zoning power over public international organizations requires express authorization because such organizations are governmental or quasi-governmental in nature. This contention is based on the common-law principle that the State is ordinarily not subject to its own enactments unless it clearly manifests the intent to be bound by them. We cited this principle in *City of Baltimore v. State*, 281 Md. 217, 378 A.2d 1326 (1977), where we relied on a description by Justice Story that we had previously quoted in *State v. Milburn*, 9 Gill 105 (Md.1850):

> General Acts of the Legislature are meant to regulate and direct the acts and rights of citizens, and in most cases, the reasoning applicable to them applies with very different, and often contrary force, to the government itself. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and undisputable upon the text of the Act.

281 Md. at 223–24, 378 A.2d at 1329 (quoting *Milburn*, 9 Gill at 118).

This passage expresses the view that the State is not governed by its own enactments. This doctrine is often invoked in determining whether a particular statute binds the State or its instrumentalities. *See, e.g., City of Baltimore v.*

*State,* 281 Md. at 223–24, 378 A.2d at 1329–30 (relying on this doctrine in holding that the State could construct a prison in Baltimore City without regard to zoning restrictions). In this passage, however, the word "government" refers only to the State of Maryland and its instrumentalities, not to all levels of government. PAHO is not part of and does not derive its existence from the State of Maryland. Therefore, Justice Story's maxim is simply irrelevant in this context.

IV.

■ PAHO's second argument is that even if it is within the reach of County zoning laws, the mandatory referral provision affirmatively exempts it from such laws. This argument is predicated on PAHO's characterization of itself as "public." We disagree with this premise. We find that the context of the word public within § 7–112 makes clear that the term does not encompass organizations such as PAHO.

PAHO relies on three authorities to support the assertion that it is public: the plain meaning of the word public; a construction of this term by the Maryland Attorney General, *see* 74 Op. Att'y Gen. 221 (1989); and PAHO's designation as a public international organization under the International Organizations Immunity Act, 22 U.S.C. § 288 (1988 & Supp. V 1993).

We agree that the term public, in common usage, would encompass PAHO. *See Webster's Third New International Dictionary* 1836 (1963) (defining public as, *inter alia,* "authorized or administered by or acting for the people as a political entity"). Nevertheless, while the plain meaning of a word is the appropriate starting point for our analysis, *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987), the word must be construed "in the context of the statute as a whole," *Forbes v. Harleysville Mutual,* 322 Md. 689, 697, 589 A.2d 944, 948 (1991) (citations omitted).

In this case, the context of the word public indicates that the General Assembly's reference was narrower than the ordinary usage of that term might suggest. Section 7–112

provides that proposals for certain development projects must be referred to the M–NCPPC. The statute goes on to say that if the M–NCPPC rejects a proposal, it "shall communicate its reasons to the *State, federal, county, municipal, or district* board, body, or official proposing to locate, construct, or authorize such public ... building." Art. 28, § 7–112 (emphasis added). By indicating that only State, federal, county, municipal, or district governments can receive answers from the M–NCPPC regarding land use proposals, § 7–112 makes clear that only those entities will be submitting such proposals.

Thus, the list in § 7–112 delimits the scope of the word public. Those entities that are included in the list are subject to non-binding referral in lieu of zoning laws; entities that do not appear on the list must comply with the County's zoning ordinance. The fact that international organizations do not appear on the list in § 7–112 provides convincing evidence that the General Assembly did not intend to exempt such organizations from the operation of zoning laws within the Regional District.

The Attorney General's opinion upon which PAHO relies does not contradict this analysis. In the opinion, the Attorney General concluded that a combination gas station and convenience store, although open to the general public, was not a "public building" within the meaning of the State Planning and Zoning Enabling Act, *see* Maryland Code (1957, 1988 Repl. Vol., 1993 Cum.Supp.) Art. 66B, § 3.08. 74 Op. Att'y Gen. at 221. Noting similarities between this statute and Article 28, § 7–112, the opinion declared, "The language of § 7–112 is clear[ ] that the facilities addressed are those in which a governmental entity has a significant and continuing interest." *Id.* at 225 n. 4. The opinion also defined public buildings as buildings that "fulfill a governmental responsibility or duty," *id.* at 228, and are "constructed under government direction using public or quasi-public funds," *id.* at 225.

PAHO contends that the United States government has a "significant and continuing interest" in the PAHO facility and

that the facility is therefore public within the meaning of § 7–112, as construed by the Attorney General. The fallacy in this argument is that the opinion only states that a facility is not public without the requisite interest; the opinion does not embrace the inverse proposition that a facility is public if some governmental or quasi-governmental entity has a significant interest in it. Although we have defined public more narrowly than the Attorney General, this stems not from conflicting interpretations, but rather from the fact that we are addressing a quasi-governmental organization while the Attorney General was considering a purely private entity. In fact, as we explain below in Section V, we share the Attorney General's conclusion that the word public applies only to entities that are exempt from zoning.

Finally, PAHO notes that it was designated a public international organization pursuant to the International Organizations Immunities Act ("IOIA"). *See* 22 U.S.C. § 288. It is not entirely clear what PAHO intends by this observation. If PAHO is claiming that, because it is "public" within the meaning of the IOIA, then it is also "public" under § 7–112, we are not convinced. The use of the word in the federal statute is not controlling on our interpretation of a state law; furthermore, in light of the fact that the Regional District Act predates the federal statute and relates to a distinct purpose, the meaning of "public" within the IOIA is not even persuasive.

Alternatively, PAHO might be claiming that, under the federal statute, it is a federal entity. We grant that if PAHO is clothed with the sovereignty of the United States, then it is immune from Maryland zoning authority and mandatory referral would be appropriate for review of the proposed headquarters. This issue involves the application of a federal statute, however, and it is therefore beyond the scope of the question certified to us by the Fourth Circuit.

For the reasons stated, we hold that, as a matter of Maryland law, PAHO is not public within the meaning of § 7–

112 and is subject to the zoning ordinance of Montgomery County.

## V.

■ We have concluded that the word public encompasses only the federal, State, and local governments, as indicated in the text of § 7–112. The salient characteristic of these entities, in this context, is that all are already exempt from the enactments of the district councils. Under the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2, the federal government is exempt from any exercise of state or local power. *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). As for the State, the common law provides that it is not bound by local zoning ordinances unless the General Assembly clearly indicates a contrary intent. *City of Baltimore v. State,* 281 Md. 217, 223, 378 A.2d 1326, 1329 (1977). Local governments, as instrumentalities of the State, enjoy this same common-law immunity. *Glascock v. Baltimore County,* 321 Md. 118, 581 A.2d 822 (1990).

If § 7–112 is construed to apply only to land use decisions by the governments of the United States, Maryland, and the local governments within the Regional District, then the statute does not create any immunities, but instead encompasses only those governments that are already beyond the reach of the district councils' authority. In other words, rather than conferring any additional exemptions, the statute merely imposes precatory limitations on the land use decisions of those entities that are not bound to comply with zoning laws.

The Maryland Attorney General, construing a similar provision of the State Planning and Zoning Enabling Act, Maryland Code (1957, 1988 Repl.Vol., 1993 Cum.Supp.) Art. 66B, § 3.08, apparently reached the same conclusion. The Attorney General wrote, "[T]he scope of § 3.08 must be determined by reference to the uses that are generally exempt from planning and zoning controls." 74 Op. Att'y Gen. 221, 226 (1989). The United States District Court, relying in part on the Attorney

General's opinion, likewise reached the conclusion that § 7–112 applies only to those land use decisions that are exempt from the zoning ordinance under other provisions of Maryland or federal law. Slip Opinion, *supra*, at 8–9.

For the reasons stated above, we find that the County Council for Montgomery County, sitting as the District Council, had the authority under Maryland law to enact zoning legislation that had the effect of prohibiting the Pan American Health Organization from locating its headquarters in a residentially zoned area in Montgomery County.

*CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. COSTS IN THIS COURT TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.*