Dear Senator Frosh:
You have asked for an opinion concerning the application of the mandatory referral process of the Regional District Act, which requires that proposed sales of land by public entities in Montgomery County or Prince George's County be referred to the Maryland-National Capital Park and Planning Commission ("the Commission") for review. In particular, you ask whether that process applies to the Montgomery County Council's disposition of surplus school properties, in light of a State statute that authorizes a county council to dispose of such properties.
We understand that the Montgomery County Attorney's Office, in defending the County Council's decision not to refer certain dispositions of surplus schools to the Commission, has taken the position in litigation that State education law alone controls the disposition of surplus school properties. We respectfully disagree.
In our opinion, the mandatory referral requirements of the Regional District Act apply to such transactions. In reaching this conclusion, we have examined the text and legislative history of that Act, as well as the statute that governs the disposition of surplus school properties, and discern no basis for exempting the sale of school properties from the general requirements of the Act.
 I Relevant Statutory Provisions
A. Regional District Act
The Regional District Act, which is codified in Annotated Code of Maryland, Article 28, creates a regional district that includes Montgomery County and most of Prince George's County and governs land use planning in that area. See Pan American HealthOrganization v. Montgomery County, 338 Md. 214, 217-18,657 A.2d 1162 (1995). Section 7-112 of that Act establishes a mandatory referral process under which "no road, park, or other public way or ground, no public (including federal) buildings or structures, and no public utility, whether publicly or privately owned, shall be located, constructed, or authorized in the regional district until and unless the proposed location, character, grade, and extent thereof has been submitted and approved by the [Maryland-National Park and Planning Commission]." With respect to the disposition of public properties, § 7-112 provides that "the acquisition or sale of any land in the regional district by any public board, body, or official shall be subject to similar submission and approval." Id. If the Commission disapproves the proposed action, it must inform the public entity or official of its reasons, but ultimately "the board, body or official in its discretion may overrule the disapproval and proceed." Id.
B. Education Article
The State education law authorizes county governments to dispose of surplus schools. In particular, it provides that "[i]f, with the approval of the State Superintendent, a county board [of education] finds that any land, school site, or building no longer is needed for school purposes, it shall be transferred by the county board to the county commissioners or county council and may be used, sold, leased or otherwise disposed of, except by gift, by the county commissioners or county council." Annotated Code of Maryland, Education Article ("ED") § 4-115(c)(1).
Your inquiry concerns whether this authorization overrides or preempts the mandatory referral process established in the Regional District Act.[1]
 II Analysis
A. Statutory Text
The determination of the relationship of two statutes is an effort to "discern and effectuate the intention of the Legislature." Schuman, Kane, Felts Everngam, Chartered v.Aluisi, 341 Md. 115, 119, 668 A.2d 929 (1995). This inquiry "begins, and ordinarily ends, with the words of the statute under review." Id.
In ED, § 4-115, the General Assembly plainly granted a county council the authority to dispose of surplus school property; however, nothing in the text of that provision suggests that the county council's authority is without limit. The language of the statute itself does not exempt the sale of such property from other State laws.
Likewise, the plain language of Article 28, § 7-112, does not exempt school properties from its scope. That provision applies, without qualification, to "the acquisition and sale of any land byany public board, body or official" in the regional district. There is no hint in the text of § 7-112 of any intent to exempt the sale of surplus school properties from the mandatory referral process.
Thus, the statutory text that authorizes a county government to dispose of surplus school property does not absolve it of the obligation to comply with the mandatory referral process. Nor have we found anything in the legislative history of these statutes that suggests any plausible alternative construction.[2]
B. Pan American Health Organization v. Montgomery County
The opinion of the Court of Appeals in Pan American HealthOrganization v. Montgomery County, 338 Md. 214, 657 A.2d 1152
(1995), supports an expansive reading of the scope of Article 28, § 7-112. In that case, the Court described the statutory framework for land use planning in Montgomery and Prince George's counties, noting that the Regional District Act establishes two mechanisms for land use planning: (1) zoning and (2) the mandatory referral process for property owned by one of the public entities listed in the statute. Id. at 217-18. The Court explained that "[t]hose entities that are included in the list are subject to non-binding referral in lieu of zoning laws; entities that do not appear on the list must comply with the County's zoning ordinance." Id. at 224. In other words, the Court viewed the two prongs of the Regional District Act's statutory scheme as all-encompassing —any land use initiative in Montgomery County is subject to either zoning requirements or mandatory referral.[3]
Thus, the disposal of surplus school property by a county council would be subject to either zoning ordinances or mandatory referral. Since a county council is a public body for the purposes of Article 28, § 7-112, its actions relating to school property are subject to the mandatory referral process absent a contrary indication of legislative intent. No such indication is apparent.
C. "Preemption" By State Education Law
There is no question that a local law may be preempted by State law under certain circumstances, and that preemption may be implied in areas such as public education, where the General Assembly "has acted with such force that an intent by the State to occupy the entire field must be implied." County Council v.Montgomery Ass'n., 274 Md. 52, 59, 333 A.2d 596 (1975). See alsoMcCarthy v. Board of Education of Anne Arundel County,280 Md. 634, 374 A.2d 1135 (1977) (preemption of local law by State education laws).
However, the Regional District Act is itself a State law. Although previously part of the Montgomery County Code, the Act was incorporated and adopted into the Annotated Code of Maryland in 1975. Chapter 892, Laws of Maryland 1975.[4] While the preemption doctrine may well apply to local laws that relate to matters of public education, a State statute is not displaced simply because its subject matter overlaps that of another statute.
Nor does the education law take precedence in these circumstances on the theory that the specific terms in a statute prevail over general language in the same or another statute. SeeBaltimore National Bank v. State Tax Commission of Maryland,297 U.S. 209, 215 (1936). In this context it can be argued with equal force that Article 28, § 7-112, is the more specific statute in that it specifies part of the procedure for the disposition generally authorized by ED, § 4-115.
In any event, it is well established that "two statutes that relate to the same subject matter will be harmonized to the fullest possible extent." Biggus v. Ford Motor Credit Co.,328 Md. 188, 208, 613 A.2d 986 (1992) (citations omitted). Two such statutes may be reconciled even if enacted at different times with no reference to each other. Id. at 218. "Only if the legislative intent, clearly expressed, is that one supersedes, or precludes prosecution under, the other will one statute be given preemptive effect." Cicoria v. State, 332 Md. 21, 43, 629 A.2d 742 (1993).
D. Harmonization of Education Law and Regional District Act
The two statutes relevant to your inquiry are easily harmonized. A county council retains its authority under ED, § 4-115 to use, sell, lease or otherwise dispose of the property, even if a referral is made consistent with Article 28, § 7-112. The Regional District Act makes clear that, even if the Commission disapproves of the proposed disposal of school property, the County Council "in its discretion may overrule the disapproval and proceed." Article 28, § 7-112. Accordingly, there is no inherent conflict between the two statutory provisions.
This interpretation is consistent with other provisions of the State education law that contain explicit directives to the county boards of education to consult with local planning agencies on the selection of school sites or the disposition of surplus schools. For example, in selecting a location for a new school, a county board of education is to consult with the local land use planning agency, seek its advice in choosing a site, and ensure that the selected site "conform[s] as far as practicable to development plans for land use in the county." ED, § 4-116(a).[5] In addition, ED, § 4-115 itself directs the Baltimore County Board of Education to solicit a recommendation from the county planning office concerning proposed school closures. ED, § 4-115(d).
Finally, the mandatory referral process is but one limitation that affects the disposition of surplus school property. If ED, § 4-115 were construed to displace other statutory conditions and confer unfettered discretion upon a county council concerning the disposal or use of surplus school land, it would nullify a host of legal limitations intended to ensure public health and safety on former school properties, such as environmental laws, utilities regulation, building codes, and fire codes. Such an unreasonable interpretation of the statute is to be avoided. Comptroller v.John C. Louis Co., 285 Md. 527, 539, 404 A.2d 1045 (1979) ("[A]n interpretation should be given which will not lead to absurd . . . results."). The avoidance of an absurd or unreasonable reading is particularly compelling where, as here, the statutes at issue are devoid of language that suggests such a result. Miller v. WesternElectric Co. 310 Md. 173, 187, 528 A.2d 486 (1987).
 III Conclusion
In our opinion, the authorization in ED, § 4-115 for county governments to dispose of surplus schools does not exempt those decisions from the mandatory referral process in the Regional District Act. The plain language of Article 28, § 7-112, applies broadly to all public agencies; nor does ED, § 4-115 itself exempt the disposal of surplus school property generally from other laws or specifically from the mandatory referral process. The absence of any legislative history that supports an exemption of school properties from the mandatory referral process, and the ease with which the two statutes may be reconciled counsels that each be given full effect. Accordingly, we conclude that ED, § 4-115 and Article 28, § 7-112, must be read together to grant a county council authority to make decisions as to the disposition of surplus school properties, but only after seeking the review and comments of the Commission.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 JoAnn Goedert Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] We do not discuss the county's obligation to obtain approval from the Board of Public Works. See Annotated Code of Maryland, State Finance Procurement Article, § 10-305; ED, § 5-301; 64 Opinions of the Attorney General 118 (1979) (Board of Public Works approval necessary when State has beneficial interest in school property as a result of State financing).
[2] The current language of ED, § 4-115 regarding the disposition of surplus school property was enacted in 1969, when authority to dispose of such property was shifted from the local school board to the county government. Chapter 405, § 47, Laws of Maryland 1969. In that year, the General Assembly undertook a comprehensive revision of Maryland's public education law which was then codified in Article 77. The bill that was proposed to revise Article 77 did not alter the existing scheme for the acquisition or disposition of school properties except for the amendment that shifted responsibility for surplus school properties to the county government. No legislative history with respect to that amendment can be found, much less any documentation that the General Assembly intended to exempt the county government from adherence to land use and other laws.
[3] In the case before it, the Court considered whether a building project of the Pan American Health Organization was a "public" project subject to the non-binding mandatory referral process, or a private entity subject to zoning restrictions. Since the Organization was not a State, federal, county, municipal or district government entity, the Court held that it was subject to County zoning ordinances. Pan American Health Organization v.Montgomery County, 338 Md. 214, 224, 657 A.2d 1152 (1995).
[4] Specifically, this statute was enacted by the General Assembly "[for] the purpose of transferring the laws of the Maryland-National Capital Park and Planning Commission from the Montgomery County Code and the Prince George's County Code of Public Local Laws to the Annotated Code of Maryland. . . ." Chapter 892, Laws of Maryland 1975.
[5] It might be argued under the maxim "expressio unius estexclusio alterius" ("the expression of one thing implies the exclusion of another thing not mentioned"), that the absence of a similar mandate in the education law concerning the disposition of surplus schools suggests that the General Assembly intended to exclude the sale of school properties from review by local planning commissions. See Kirkwood v. Provident Savings Bank,205 Md. 48, 55, 106 A.2d 103 (1954). However, the Court of Appeals has long cautioned that the maxim "is not a rule of law, but merely an auxiliary rule of statutory construction" to be applied when other indicia of legislative intent cannot be found. Id. Moreover, the rule "should be used with caution, and should never be applied to override the manifest intention of the Legislature." Id. In particular, where the rule would effectively nullify an aspect of the operation of one of the statutes, it may only be applied if expressly mandated in the face of "a manifest inconsistency in the two statutes, or [where] their provisions are so repugnant that they cannot stand together." Id. Repeals by implication are to be avoided whenever reasonably possible. Farmers MerchantsNational Bank of Hagerstown v. Schlossberg, 306 Md. 48, 61,507 A.2d 172 (1986); Board of Education of Garrett County v. Lendo,295 Md. 55, 62-63, 453 A.2d 1185 (1982).
 *Page 73