Dear Secretary Benjamin:
You have requested an opinion whether local zoning regulation applies to State-owned property that is leased to a non-profit entity to operate a domestic violence shelter as part of the State's program to combat domestic violence. Specifically, you ask whether buildings on State property occupied by the House of Ruth are exempt from Baltimore City zoning regulations if the buildings are used by the House of Ruth or by another non-profit entity.
We conclude that the property, as the House of Ruth currently uses it, is exempt from Baltimore City zoning restrictions. The property will remain exempt from zoning requirements, if leased to another non-profit entity, so long as it is employed for a "public purpose." However, the mere fact that the lessee happens to be a non-profit entity is insufficient to exempt that property from the zoning laws. We set forth below some factors that should be considered to determine whether a particular use is for a public purpose.
 I Background
A. State Domestic Violence Program
The State Domestic Violence Law requires the Department of Human Resources ("DHR") to establish a program to help victims of domestic violence and their children by providing temporary shelter, counseling, and other assistance. Annotated Code of Maryland, Family Law Article ("FL"), § 4-515(a). As part of this effort, DHR is to establish "in a major population center of this State at least 1 program serving the area." FL, § 4-515(b). DHR is to supervise and monitor the operation of the programs, establish standards of care and admission policies, set fees for services, and generally adopt rules governing the operation of the programs. FL, § 4-515(c)(2); COMAR.07.06.04. The statute also authorizes DHR to provide funding and technical assistance to "a local organization that shows it is able and willing to run a domestic violence program." FL, § 4-515(d).
B. House of Ruth
Established in 1977, House of Ruth, Baltimore, Inc. ("the House of Ruth"), is a non-profit corporation that operates a shelter and provides services to victims of domestic violence and their families. It is the only comprehensive domestic violence program serving Baltimore City. In addition to operating a shelter, the House of Ruth manages legal service projects related to domestic violence in the District Court in Baltimore City and Prince George's County, under contract with the Administrative Office of the Courts. In connection with the State domestic violence program, the House of Ruth receives approximately $500,000 in operating grant funds from DHR each year. The House of Ruth also receives funding from Baltimore City, generated by a surcharge on marriage license fees, pursuant to FL, § 2-404.[1]
C. The Property
The House of Ruth shelter is located on State-owned land, part of the campus of the former Montebello Hospital, under the control of the Department of Health and Mental Hygiene ("DHMH"). Under two 50-year ground leases, the House of Ruth leases the property from DHMH for $1 per year. DHMH also makes an annual grant to the House of Ruth of approximately $70,000 to cover utility expenses. Through the Department of General Services, DHMH also contributes to the facility's renovation and maintenance costs, subject to available funds.
In June 1997, the House of Ruth undertook an expansion of the shelter. The construction, now complete, included renovation of an existing building and construction of a 25,000 square-foot addition that houses a 64-bed emergency shelter. The existing building was renovated to include six apartments designed to serve as transitional housing for battered women and their families. Approximately one-half of the cost of this construction was financed by State grants and loans.[2]
In August 1997, Baltimore City advised the House of Ruth of its view that the construction project was required to comply with City zoning laws. Although the House of Ruth objected to the City's assertion of jurisdiction, it submitted to the local zoning process and ultimately received zoning approval from the City.
 II Application of Zoning Laws to State Property Used by Private Entity
Under common law, the State is not bound by local zoning laws "unless the General Assembly clearly indicates a contrary intent."Pan American Health Organization v. Montgomery County,338 Md. 214, 226, 657 A.2d 1163 (1995). In 1977, the Court of Appeals held that Baltimore City's zoning enabling law "neither specifically provides nor clearly implies that the State is intended to be subject to its provisions." Mayor and City Councilof Baltimore v. State, 281 Md. 217, 223, 378 A.2d 1326 (1977). The General Assembly has not subsequently expanded the City's zoning authority to bring State property within its reach. See
Annotated Code of Maryland, Article 66B, § 2.01 et seq.
State property leased to a private party remains exempt from local zoning laws when it is used for a "public purpose." Mayorand City Council of Baltimore v. State Department of Health andMental Hygiene, 38 Md. App. 570, 572-578, 381 A.2d 1188 (1978) ("DHMH"). See also 78 Opinions of the Attorney General 58, 62 (1993). Thus, whether local zoning regulations apply to the State property in Baltimore City leased to the House of Ruth depends on whether that property is used for a public purpose.[3]
A. Public Purpose Generally
The courts have not articulated a single definition or analytical approach to determine whether a particular use is public or private. 78 Opinions of the Attorney General 58, 64 (1993); see also DHMH, 38 Md. App. at 575. Indeed, in the context of a condemnation case, the Court of Appeals questioned the wisdom of attempting to formulate a general rule. Prince George's Countyv. Collington Crossroads, Inc., 275 Md. 171, 181, 339 A.2d 278
(1975) ("Collington Crossroads"). Nevertheless, it appears that the "determinative consideration is the `public' quality of the predominant purpose motivating the use of the property — of the ends desired to be achieved." 78 Opinions of the Attorney General
at 64.
An important factor in this inquiry is whether the General Assembly itself has made a determination that the use serves a public purpose. If so, the Court of Appeals has held, "the prima facie presumption is that the use thus declared to be public is in fact public." Anne Arundel County v. Burnopp, 300 Md. 343, 348,478 A.2d 315 (1984) (quoting Murphy v. State Roads Commission,159 Md. 7, 15 (1930)). Thus, the courts and this Office have looked to underlying legislation to determine whether a particular use served a public purpose. See, e.g., DHMH, 38 Md. App. at 577
(legislation requiring State to establish facilities for children in need of services supported finding that private group home on State property served a public purpose); 78 Opinions of theAttorney General at 71-72 (Legislature's authorization of construction of student housing "for the benefit of the people of the state" supported conclusion that lease of State property to a private entity for student housing fulfilled a public purpose). Additional factors supporting a finding of public use include "the extent of continuing State control over the property and the likelihood of private persons being otherwise unwilling to undertake the same venture." 78 Opinions of the Attorney General
at 64 (citing Collington Crossroads).
B. Use of State Property by the House of Ruth Shelter
With respect to the House of Ruth shelter, the Court of Special Appeals' decision in DHMH is particularly instructive. InDHMH, the State Department of Juvenile Services ("DJS") — which was then a part of the Department of Health and Mental Hygiene — had acquired property in Baltimore City which it had leased to the Campfire Girls Council of the Chesapeake, Inc. ("CFG"), a private non-profit charitable organization. CFG used the leased property to operate a home for teenage girls committed by the Juvenile Court of Baltimore City to DJS jurisdiction as "children in need of supervision" ("CINS"). In holding that the property was used for a public purpose, the Court of Special Appeals pointed to statutory language specifically charging DJS with "establishing, maintaining, and operating . . . such `facilities as may be needed properly to diagnose, care for, train, educate, and rehabilitate children in need of these services. . . .'" 38 Md. App. at 577. The lease of the property to CFG as a group home thus carried out DJS' legislative mandate. Moreover, the property was put to a public use "in that it is being used by the State for the benefit of the general public in providing" needed services to CINS. Id.
The House of Ruth shelter is analogous to the CFG group home considered in DHMH. Like CFG, the House of Ruth is a private non-profit organization that leases State property to operate a program created by State law and overseen by a State agency. In particular, the program operated by the House of Ruth helps meet DHR's legislative mandate to implement a domestic violence program, including creation and regulation of shelters and transitional housing for victims of domestic violence and their families. See FL, § 4-515. Not only does DHR regulate the domestic violence program offered by the House of Ruth, it and other agencies provide substantial subsidies for both the operational and capital expenses of the program. As in the case of CFG, the State is making its property available to the House of Ruth to fulfill the legislative mandate. Moreover, the State has had continuing involvement in the activities of the House of Ruth and exercises a degree of control through DHR oversight. Given the nature of the services provided by the House of Ruth, as well as the close relationship between the House of Ruth and State government, the House of Ruth shelter serves a public purpose as much as CFG's group home. Because the House of Ruth is carrying out this public purpose on State property, that property is exempt from local zoning regulation.
C. Use of State Property by Another Non-Profit Entity
You have asked whether the property currently leased to the House of Ruth would continue to be exempt from City zoning requirements if a different non-profit organization were to lease the property. If a new lessee were to operate a shelter as part of the State domestic violence program, the property would remain exempt from zoning requirements. However, if the new lessee were engaged in some other activity, the property would continue to be exempt from City zoning requirements only if that activity also constituted a "public purpose." The fact that the new lessee was a non-profit organization would not be determinative as to whether the exemption from local zoning authority would continue.
Whether a particular use of State property by a private entity is for a public purpose is a fact-specific inquiry. As noted above, the focus is on the "presence of a recognized `public' purpose" — i.e., whether the use redounds to the benefit of the public at large. The best indicator of a public purpose is an enactment of the General Assembly declaring that a particular purpose is for the public good. Other factors, such as the extent of State oversight, funding, or other involvement, may also support a finding of a public purpose.
 III Conclusion
The property currently occupied by the House of Ruth shelter is exempt from City zoning requirements because it is State-owned property used by the House of Ruth for a public purpose. That exemption would continue if the property were leased to another private entity if that entity employed the property for a public purpose.
 J. Joseph Curran, Jr. Attorney General
 Joel Tornari Assistant Attorney General
________________________ Robert N. McDonald Chief Counsel Opinions and Advice
[1] In connection with its legal services program, the House of Ruth also receives funds from the Governor's Office of Crime Control and Prevention and from the Maryland Legal Services Corporation.
[2] In total, the State contributed $2,010,000 in grants and loans. DHMH provided a $1.1 million capital construction grant to the House of Ruth to assist in the construction of the addition. The General Assembly appropriated a $250,000 matching grant for the construction. In addition, the House of Ruth also received a loan of $660,000 from the Department of Housing and Community Development ("DHCD") for the shelter and transitional housing facilities. DHCD augmented this loan with tax credits totaling $841,728. The House of Ruth also received a Community Development Block Grant and two grants totaling $450,000 from the federal Department of Housing and Urban Development.
[3] Not all property used for a "public purpose" is exempt from local zoning regulation. See Board of Child Care ofthe Baltimore Annual Conference of the Methodist Church, Inc. v.Harker, 316 Md. 683, 561 A.2d 219 (1989). In Harker, a non-profit operator of State-licensed child care facilities argued that those facilities carried out a public purpose and were therefore exempt from local zoning control, even when located on private property. While recognizing that State property used for a public purpose would be exempt from local zoning regulation, the Court of Appeals declined to extend that exemption to private property.316 Md. at 693-96.
 *Page 120