AMERICAN OIL COMPANY *v.* MILLER, ET UX., ET AL.

[No. 87, October Term, 1953.]

*Decided February 10, 1954.*

34

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*O. Bowie Duckett,* with whom were *Malcolm B. Smith, James K. Eagan, Jr.,* and *John W. Sherman* on the brief, for the appellant.

*June L. Green,* with whom was *William A. Ehrmantraut* on the brief, for Philip E. Miller et al., appellees.

*Wilson K. Barnes* for The Magothy River Association, Incorporated, appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree declaring null and void resolutions of the County Commissioners of Anne Arundel County, (the Commissioners), rezoning a lot of land in Anne Arundel County, the property of Frank Festagallo and Dolores Festagallo, his wife.

The Festagallos were owners of a small triangular lot of land consisting of 1.88 acres in the Third Election District of Anne Arundel County located approximately one thousand feet south of the town of Arnold and about four miles north of Annapolis. The west side of the triangle, consisting of 431.05 feet is on the east side of the Ritchie Highway leading from Baltimore to Annapolis. The east side of the triangle, consisting of 498.59 feet is on the west side of the old Annapolis road. The base of the triangle, consisting of 338.37 feet is between these two roads. The apex of the triangle

is located where the old Annapolis Road joins, but does not cross, the Ritchie Highway.

Apparently Anne Arundel County first acquired authority for zoning by Chapter 551 of the Acts of 1943. Very little was done as a result of this Act. *Anne Arundel Co. v. Ward*, 186 Md. 330; *Anne Arundel Co. v. Snyder*, 186 Md. 342. This Act was repealed by Chapter 388 of the Acts of 1947 and by that Act seven new sections were adopted authorizing and empowering the Commissioners to operate under a comprehensive zoning plan. By that Act and Chapter 426 of the Acts of 1949 a Zoning Commissioner and a Board of Zoning Appeals were authorized. Previous to April 20, 1948, most of the land on the Ritchie Highway from Glen Burnie to Annapolis was zoned "Agricultural", including the property here at issue, or "Residential". On January 3, 1952, the Commissioners adopted a resolution placing Anne Arundel County under the provisions of Article 66B, Sections 10 through 37, both inclusive, of the Code of Public General Laws of 1951. The previous zoning was by this resolution continued in effect until a new plan was adopted pursuant to the provisions of Article 66B, *supra*. On July 1, 1952, this new zoning plan became effective.

On April 20, 1948, the Commissioners adopted what was termed as a comprehensive zoning plan for the entire Third District. This plan, which was declared invalid by the court due to the omission of the key from the zoning map, was readopted on February 15, 1949, and had been operating until June, 1952, the date about which we are concerned in this case, except for certain exceptions. The only exception which is pertinent here is that the western corners of the intersection where the Arnold Road meets the Ritchie Highway were left "Agricultural" in the comprehensive zoning of 1948 because these corners were occupied by two residences. At the request of both property owners, the western corners were rezoned to "Heavy Commercial", on June 28, 1949, in order to conform with the other side of

the highway where a service station was located. After the time with which we are here concerned, a service station had been erected on this rezoned land. This comprehensive plan established either "Light" or "Heavy Commercial" zones on the Ritchie Highway at Harundale, Mountain Road, Elvaton, Pasadena, Earleigh Heights, Macey's Corner, Jones' Station, Arnold and Winchester. Under this plan the Festagallo property continued to be zoned "Agricultural", which at that time permitted one family or two family dwellings.

Previous to December 2, 1947, the Festagallos filed an application to rezone the property here in question from "Agricultural" to "Commercial". This rezoning was refused by the Commissioners. According to the information before us, the Commissioners refused eighteen other applications for rezoning of lands on the Ritchie Highway and the Revell Highway between 1946 and June 10, 1952. On October 30, 1951, the Festagallos filed with the Zoning Commissioner a petition for the rezoning of their property from "Agricultural" to "Heavy Commercial", in order to permit the property to be used as a gasoline service station. On February 2, 1952, the Zoning Commissioner filed a report disapproving this application for rezoning and recommending that the zoning remain as established for the following reasons:

"1. The zoning plan for the Governor Ritchie Highway has established certain commercial intersections. These intersections are not completely developed along commercial lines at this time and therefore it is the opinion of the Zoning Commissioner that no additional commercial zones are necessary at this time.

2. In establishing the above plan the Board of County Commissioners took into consideration the key intersections on the highway. In the Arnold area it was determined that the key intersection is the one adjacent to this intersection where there is now a blinker light

and accordingly the commercial zone at Arnold was established at the latter intersection rather than at the one now under consideration.

3. Nothing has taken place on the Governor Ritchie Highway since this request was originally filed and acted on by the Board of County Commissioners to warrant a change in the recommendation of the Zoning Commissioner at this time.

4. Letters of protest were received from seven (7) property owners in this area and no letters have been received in favor of the application."

The report of the Zoning Commissioner was approved by the Planning and Zoning Commission on March 20, 1952, and Mr. Rogers, the Zoning Commissioner, was requested to set a hearing before the Commissioners. On June 10, 1952, the Commissioners, by a vote of six to two, passed a resolution stating that after public hearings and after considering the reports of the Zoning Commissioner and the Planning and Zoning Commission opposing the change and upon viewing the site in question, they approved the requested change from "Agricultural" to "Heavy Commercial" for the property here in question. This resolution contained the following:

"WHEREAS, the traffic on the Governor Ritchie Highway will be considerably increased upon the completion of the bridge over the Chesapeake Bay on U. S. Highway No. 50 thus increasing the need for areas zoned for commercial on the Governor Ritchie Highway, and

WHEREAS, there is now an inadequate number of districts zoned as commercial on the Governor Ritchie Highway, said inadequacy resulting in unreasonable prices or rents being demanded by the owners of said commercially zoned properties, and

WHEREAS, the topography of said lot is deemed to be unsuitable for residential or agricultural

use because of its low lying character, its chief·
if not sole prospective use being commercial
WHEREAS, it is the opinion of the Board that
additional commercial zones at proper locations
would not interfere with the safety, comfort,
convenience and welfare of the users of the·
Governor Ritchie Highway. * * *"

On July 1, 1952, the Commissioners adopted a new com-
prehensive zoning plan wherein the zoning of the prop-
erty here in question was continued as "Heavy Com-
mercial".

Of course, in passing upon the decision of the
Commissioners, we will consider only the facts and
circumstances existing at the time the resolution was
passed on June 10, 1952. On June 21, 1952, Philip E.
Miller and wife and Carl E. Ortman and wife, owners
of residences in the immediate neighborhood and tax-
payers, filed a suit against the Festagallos and the
Commissioners in the Circuit Court for Anne Arundel
County, asking that the resolutions of the Commissioners
of June 10, 1952, and July 1, 1952, be stricken down.
On March 4, 1953, a second supplemental bill was filed
by the Millers and the Ortmans against the Festagallos,
the Commissioners and the American Oil Company,
alleging that the American Oil Company had by decree
become the transferees of the Festagallo property. This
bill further alleged the original zoning of the Festagallo
property as "Agricultural"; the second application for
rezoning to "Heavy Commercial"; the disapproval of
the Zoning Commissioner and the Planning and Zoning
Commission; and the action of the Commissioners in
rezoning the property as "Heavy Commercial". It also
alleged that a building permit was about to be issued
to permit the erection of a gasoline station. The peti-
tioners claimed that the establishment of this service
station would seriously depreciate their properties; would
tend to destroy the comfort, well being and property
rights in the neighborhood; that the action of the Com-
missioners was arbitrary, unreasonable and discrimina-

tory and without any substantial relation to the public health, morals or general welfare; and that such an action constituted "spot" zoning. Petitioners asked that the resolutions of June 10, 1952, and July 1, 1952, be declared unconstitutional and void and that an injunction be issued restraining the operation of the resolutions. On August 6, 1952, the Magothy River Association filed a petition stating that it consisted of approximately seven hundred members who were vitally interested in land in the Third Election District of Anne Arundel County and asked to intervene in the case, which permission was granted. From a decree granting the relief prayed in this second supplemental bill, the American Oil Company alone appeals to this Court.

The law is well settled in this State that where a legislative body under powers granted by the Legislature has enacted a zoning ordinance, the review by the courts is restricted and narrow in scope. Such an ordinance being in the exercise of the police power is presumed to be valid. A successful attack must show affirmatively and clearly that the ordinance is arbitrary, capricious, discriminatory or illegal. The presumption of reasonableness and constitutionality of the ordinance applies to rezoning as well as to original zoning, though not with as great force. The original zoning is presumed to be well planned and designed to be permanent. In order for the rezoning to be valid it must appear that either there was a mistake in the original zoning, or that the character of the neighborhood has changed to such an extent as to justify the amendatory action. The courts will not substitute their judgment for that of the legislative body if the question decided was fairly debatable. *Northwest Merchants Terminal v. O'Rourke,* 191 Md. 171; *Kracke v. Weinberg,* 197 Md. 339; *Wakefield v. Kraft,* 202 Md. 136; *Zang & Sons v. Taylor, et al.,* 203 Md. 628, just decided. We will therefore examine this case to determine whether the rezoning here was arbitrary, capricious, discriminatory or illegal and whether the action of the Commissioners was fairly debatable.

To find that this rezoning was legal, it is necessary that we find that there was a mistake in the original zoning or that the character of the neighborhood was changed to such an extent as to justify the action. Even if we assume in this case, which we do not, that the original zoning as "Agricultural" was more or less perfunctory, we find that after the original zoning the Festagallos applied for a change to "Commercial", which was denied. The Commissioners, in refusing that first request, must have given consideration to the matter.

From the resolution of the Commissioners, it is evident that they based their action for rezoning on the following: increase in traffic upon the completion of the Chesapeake Bay bridge; inadequate number of sites zoned commercially; unsuitable topography of the lot; and that additional commercial zones at proper locations would not interfere with the safety, comfort, convenience and welfare of the users of the highway.

As to the increase in traffic, Mr. Vern J. Munger, Jr., traffic analyst, traffic control supervisor, and attorney for the State Roads Commission, testified as to the record of the State Roads Commission showing traffic count on the Ritchie Highway. The Chesapeake Bay bridge was opened to traffic on July 30, 1952. In actual figures the daily average of traffic of vehicles follows: for 1948—7,803; for 1949—9,492; for 1950—9,935; for 1951—10,980; for 1952—12,777. Therefore the increase during 1952, the year the bridge was opened, over 1951 was between sixteen and seventeen per centum. There appears to be no evidence in this case that anyone has been unable to obtain service for his automobile, gasoline, oil or water in the vicinity. In fact, there was, on June 10, 1952, a modern Esso service station eight hundred feet from the site here in question. The record shows there were ten gasoline service stations on the south bound lane and ten on the north bound lane of the fourteen miles of the Ritchie Highway between the Glen Burnie stop light and Annapolis and there were two stations on the Revell Highway between the Chesapeake

Bay bridge and its junction with the Ritchie Highway. From an exhibit filed in the case it is shown that on the Ritchie Highway from Potee Street in Brooklyn to the Severn River bridge there were forty-one gasoline service stations, twenty on the right or west side of the highway and twenty-one on the left or east side. Of these the American Oil Company had eight. According to the testimony of Mr. Edward Heiselberg, the Planning Administrator for Anne Arundel County since May, 1952, on the New Jersey Turnpike the service stations are on the same side of the road and are about twenty-four miles apart. There is no testimony here to show that the service stations in existence on the Ritchie Highway, when the resolution was passed, could not reasonably accommodate all the traffic thereon. The appellant relies on *Ellicott v. City of Baltimore,* 180 Md. 176. The lot there, where a service station was permitted, was on the corner of Cold Spring Lane which had recently been opened as a wide highway connecting the more thickly populated sections of Baltimore to the east and west. In the instant case, with the number of service stations on the Ritchie and Revell Highways and with no testimony that these could not accommodate the traffic, we are of opinion that an increase in traffic of seventeen per centum did not make the rezoning debatable.

As to the contention that there were an inadequate number of sites zoned commercial, Mr. LeRoy C. Moser, right of way engineer for the State Roads Commissioner, testified that there were fifty-two commercial places from the intersection of Glen Burnie to the new Revell-Ritchie interchange. On the Ritchie Highway there were sixty-five hundred feet zoned commercially, of which forty-nine hundred feet had not been used. "Heavy Commercial" zoning was required for a service station at the time this resolution was passed. On the same highway there were nine thousand feet zoned "Heavy Commercial" of which sixty-nine hundred feet had not been used. As hereinbefore stated, almost directly opposite

the Esso service station, eight hundred feet from the area here in dispute, was land which, on June 28, 1949, had been rezoned "Heavy Commercial". Since June, 1952, we are informed that a service station has been erected there. Apparently the oil company which built this station did not think that the price was too high to prevent the purchase. With all the unused land zoned "Heavy Commercial" on this highway, availability of adequate sites does not seem to be debatable.

As to the contention that the topography of this lot was unsuitable for other purposes, residential or agricultural, the testimony shows that the apex of the triangle and about half of the lot is below the road grade. However, the rest of it is about fifteen feet above the road grade. At the time here in question the zoning as "Agricultural" permitted one or two family dwellings. According to the testimony of Mr. Joseph Lazenby, produced by the plaintiffs, and who had been in the real estate business in the vicinity for many years, although the most appropriate use of this land would be commercial, it could be used for residential purposes with no trouble at all. He said: "I would say its better use is commercial, but there is no reason in the world why it could not be developed with residences. I would say at least three residences on the tract." Mr. Mellor, another real estate broker in the community, produced as a witness by the defendants, testified that, although none of this land had ever been used for agricultural purposes, the land across the road from it had been used as a garden. He also testified that, although it would be costly, the lot could be used for residential purposes. Certainly, if the American Oil Company were to erect a service station on this site, it would be necessary to grade the land. With grading, residences could be built. As was said by Judge Bond in *Ellicott v. Baltimore, supra,* at page 184: "Any zoning in districts must involve denials of more profitable uses for some individual lots. *Leaby v. Inspector of Buildings,* 308 Mass. 128, 31 N. E. 2d 436; *Zahn v. Board*

*of Public Works,* 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074." As pointed out in the able opinion of the chancellor, there is no evidence here that the topography of this lot is such that to continue the present zoning would depreciate its value to such a great extent as in *Northwest Merchants Terminal v. O'Rourke, supra,* or in *Kracke v. Weinberg, supra.* The topography of the lot as a basis for rezoning does not appear debatable. Nor does the evidence here show that the topography of the lot was such that the original zoning as "Agricultural", which allowed one or two family dwellings, was error or mistake as in *Hoffman v. City of Baltimore,* 197 Md. 294.

As to whether this service station would interfere with the safety, comfort, convenience and welfare of the users of the highway, there was testimony that some of the houses in this vicinity were built with the idea of getting away from commercial establishments and that the service station would depreciate the value of the properties. Mr. Lazenby testified that the service station would seriously reduce the value of the residential properties in the neighborhood. There is no testimony to the contrary.

The appellant lays great stress upon what the Commissioners in this case "knew". The preamble to the resolution and the personal knowledge of the Commissioners could not be considered as evidence of change. Whether the action of the Commissioners was arbitrary is to be determined by the facts from which the conclusion was drawn, not from the conclusion itself. The Courts review the action, not the opinion, of the Commissioners. *City of Baltimore v. Byrd,* 191 Md. 632; *Williams v. McCardell,* 198 Md. 320, 330; *Zang & Sons v. Taylor, supra; Strain v. Mims,* 123 Conn. 275, 193 A. 754.

Zoning is permitted as an exercise of the police power and is presumed to be well planned and intended to be permanent. For the public good, it takes away some of the rights of individuals to use their property

**44**

as they might desire. At the same time it gives them rights to restrict injurious uses of the property of others. Zoning cannot be done by piecemeal legislation. It can be upheld only as part of a general plan for a community which sets apart certain areas for agricultural, residential, and business purposes, where such uses are obviously suitable and needed. Such a plan must be for the public health, welfare and safety. *City of Baltimore v. Byrd, supra..*

Finding in this case that there was no mistake in the original zoning; that the character of the neighborhood had not changed to such an extent as to justify the rezoning; and that the reasons given by the Commissioners are not supported by the facts in the case, we agree with the finding of the chancellor. The decree will be affirmed.

*Decree affirmed, with costs.*