HARDESTY ET AL. *v.* BOARD OF ZONING APPEALS OF BALTIMORE COUNTY

[No. 11, October Term, 1956.]

174

*Decided November 7, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Edward D. Hardesty, pro se,* for the appellants.

*W. Albert Menchine,* with whom was *A. Gordon Boone* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order affirming rezoning made by the Board of Zoning Appeals of Baltimore County, (the Board).

On March 14, 1955, Elvin J. Daniels, Jr., filed with the Zoning Commissioners of Baltimore County an application asking that the zoning status of a parcel of land on the east side of Charleston Avenue in Baltimore County be reclassified from "A" Residence zone to "E" Commercial zone. On March 30, 1955, the County Commissioners of Baltimore County, (the Commissioners), adopted new zoning regulations which in effect changed the designation of an "A" Residence zone to an "R-6" zone and changed the designation of an "E" Commercial zone to a "B. L." zone. Mr. Daniels desired to erect on the land sought to be rezoned a regional shopping center with parking accommodations for at least five hundred automobiles. This contemplated shopping center would include a large chain store, grocery store, drug store, five and ten cent store, hardware store, beauty shop and shoe store. The erection of such a shopping center is permissible in

a "B. L." zone. On April 27, 1955, the Zoning Commissioner approved the application. An appeal was taken to the Board and on October 27, 1955, the Board granted the reclassification of the tract to a "B. L." zone. The Board stated in its opinion that this property lies on the east side of Charleston Avenue, starting approximately three hundred and ten feet south of Fifth Avenue and thence runs in a southerly and easterly direction, having an irregular shape and containing within its limits an existing lake of approximately five acres of the total 16.65 acres petitioned to be rezoned. The Board further stated that the testimony presented and a "site inspection" of the premises clearly established that the existence of the lake made the land completely unsuitable for any residential development, as it presented an extreme natural hazard to the life and safety of children in the area who frequented the shore lines thereof. In order for the petitioner to use the property for any business or commercial use it would be necessary for him to fill a large portion of the lake and therefore the Board felt that such a fill was an absolute prerequisite to the use of the area for commercial or business purposes. The opinion also stated that the Board did not incorporate such a condition in its order "because of necessity a large portion of the lake will have to be filled." The Board further found that there had been a tremendous residential growth in the area in the past few years by the construction of group homes. The Board therefore found that the area had undergone tremendous residential and commercial growth in recent years and the property was absolutely unsuitable for any residential development due to the existence of the lake. It further found the need for additional commercial shopping centers was necessary to the community. It therefore, on October 27, 1955, passed an order granting the petition with the condition that an anchor post type fence with a minimum height of seven feet be erected around the entire unfilled portion of the existing lake. A petition for a writ of *certiorari* and appeal was presented to the Circuit Court for Baltimore County and the appeal granted. From an order of the court sustaining the action of the Board, the appellants appeal.

The appeal is taken under the provisions of Chapter 634,

Section 366 (g), Acts of 1953, Title 23, Section 366 (g), of the Code of Public Local Laws for Baltimore County, 1953 Supplement. That act provides that the Circuit Court shall have the power to affirm the decision of the Board or reverse the same in whole or in part, and may remand any case for the entering of a proper order or for further proceedings as the court shall determine. It further provides for an appeal to this Court from any decision of the Circuit Court reviewing a decision of the Board and this Court shall not award costs of the appeal against any party except the appellant.

Of course, when an application is made for reclassification from one zone to another, there is a presumption that the original zoning was well planned and was intended to be more or less permanent. Before a zoning board rezones property there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought to be made. The burden of proof of original mistake or substantial change is upon the proponents of the change. *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 114 A. 2d 614, and cases there cited.

In zoning cases, as stated many times by this Court, where the legislative body has rezoned, the courts will not substitute their judgment for that of the legislative body if the question is fairly debatable. The courts will not substitute their judgment for that of the Board as to the wisdom of the action taken. The courts will reverse only where there are no grounds for reasonable debate and where the action of the Board is arbitrary, capricious, discriminatory or illegal. *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 437, 121 A. 2d 249.

As to whether there was a mistake in the original zoning it must be noted that the decision of the Board was founded in part on the personal inspection of the property by the Board. The personal knowledge of the Board cannot be considered on appeal. The review is made of the facts from which the conclusion is drawn, not from the conclusion itself. *American Oil Co. v. Miller,* 204 Md. 32, 43, 102 A. 2d 727, and cases there cited.

The finding of the Board that the original residential zon-

ing was erroneous is based on the fact that the lake presented an extreme natural hazard to children. The testimony to sustain this is that of the father of one of the two owners of the property who would be the manager of the building project. He stated that the lake at that time was extremely hazardous to children. He admitted, however, that whether the land was zoned residential or commercial it would be necessary to fill in part of the lake. He also admitted that it would be possible to put a fence around the lake "without bulldozing and cutting down". There was adequate testimony that the land was best suited for residential purposes because of narrow streets in the vicinity. Also, the lake would add value to the property for residential purposes because people preferred a view of water and if a fence were erected around the lake it would be adequate for residential purposes. To hold that accessibility of land to water on account of danger to children, makes such land unsuitable for residential purposes would disqualify some of the best residential properties in the State. The petitioner further contends that on account of the competition from the adjoining Riverview development it would not be feasible to build houses on the land. The developer of Riverview, when asked whether he had any trouble selling his houses, testified that he sold one hundred and sixty-one houses on one Sunday. There is no testimony here to show that the residential zoning so permanently restricts the use of petitioner's property that it cannot be used for any reasonable purpose as in *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482, and cases there cited, relied on by the petitioner. We see no basis for a holding that there was a mistake in the original zoning of the subject property.

As to whether the character of the neighborhood had changed to such an extent that commercial reclassification should be made, the Board based its finding on the tremendous residential growth of the area in recent years and the need for an additional commercial shopping center to accommodate that increase in population. The testimony shows that the tract here in question lies on the east side of Charleston Avenue, twenty feet in width, near its intersection with Fifth Avenue, sixteen feet in width, and these streets have no sidewalks.

Zoned commercially in that area was a large tract of land four hundred feet south; another tract, about two blocks distant, at Baltimore and Fifth Avenues; another tract at Hazel and Hammond's Ferry Road; another tract of three acres zoned for a shopping center three blocks away. None of these had been developed for shopping centers. The tract sought to be rezoned borders in part on the Riverview development. Riverview, at the time of the hearing, consisted of approximately five hundred units and eleven hundred more units were contemplated. Twenty-five hundred families had moved in the general area within the past year. At the time of the taking of testimony in this case apparently on Hammond's Ferry Road there was at a distance of about five or six blocks a drug store, three grocery stores, a five and ten cent store, a hardware store, two filling stations, and an American store. The petitioner presented to the Board a petition signed by about three hundred persons requesting the reclassification for the shopping center. In addition to the Riverview development another development of sixty-five units known as Highland Heights had been constructed within three or four blocks of the subject property. Several witnesses testified that the nearest shopping center was inadequate and the shopping center contemplated would be an improvement to the whole community. Mr. Herbert J. Smull, testifying for the protestants, stated that he was a realtor. His qualifications were admitted as a real estate agent. He said he was familiar with the land in question and that it was best suited for residential purposes. The land immediately surrounding was strictly residential. He further said that the land in question was not suitable for commercial purposes because of the narrow streets and lack of curbing and sidewalks in the vicinity. He stated that about two blocks distant there was land zoned commercial. Also there was another tract of land in the same vicinity zoned commercial and that, if these tracts were developed, the neighborhood would be "over-commercialized". He further said the lake would add to the value of the property for residential purposes because people preferred a view of water and particularly that, if a fence were put around the lake, it would be adequate for residential purposes. He said

he was of the opinion that there was a definite need for a shopping center in the area. Mrs. Jean Leonard, a resident of the community, testified in opposition to the granting of the rezoning and stated that if a shopping center were allowed it would be extremely hazardous to children as they were compelled to walk on the narrow roads going to school as there were no sidewalks. Another witness, Mrs. Martha Harms, a resident of the neighborhood, testified to the same effect. Many other persons appeared at the hearing in protest.

Code of Public Local Laws of Baltimore County, 1948, Title 23, Section 366 (a); Code of Baltimore County, 1955, Title 30, Section 532 (a); Code of Public General Laws of Maryland, 1951, Art. 66B, Section 21 (c), provide in part that zoning regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets. It was said by Judge Markell in *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 192, 60 A. 2d 743: "Zoning regulations must be 'designed to lessen congestion in the streets.' Art. 66B, sec. 3. In making or changing such regulations traffic problems may be material considerations. 'The peculiar hazard to school children' of a proposed filling station within 300 feet of the school grounds and 450 feet of the building may be one of the circumstances supporting the reasonableness of denial of a permit. *Mayor and City Council of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804, 806, 808, 809." As above stated, the area sought to be rezoned faces on Charleston Avenue. There is testimony that this street is sixteen feet in width, although one witness called by the protestants stated that it was twenty feet wide. The only other street accessible to the subject property is Fifth Avenue which is sixteen feet in width with no sidewalks. Parking is allowed on both sides of these streets, leaving only a single lane for moving traffic. The applicant stressed the fact that he had constructed a fifty foot road through his property to Fifth Avenue. This fifty foot road might accommodate the traffic from the shopping center until it reached Fifth Avenue. However, it is very evident that a sixteen foot street without sidewalks is not sufficient for access to a parking area for five hundred automobiles. The applicant offered in evidence a

letter from an attorney who lived in the vicinity. In this letter the attorney stated that he believed a shopping center would be a real benefit to the residents in the area. He also stated that he signed the petition opposing the commercialization of the area, among other reasons, because "* * * the streets in this area are not adequate now and increasing the traffic would seriously endanger the safety of our children. If you have a solution to the traffic problem * * * then I hope you are successful and I wish you luck." No solution has been offered. A large shopping center would require heavy truck travel for the delivery of freight. There was also testimony that as a result of restriction of traffic only third or fourth grade stores would be located on petitioner's property.

We are therefore of opinion that the Board was arbitrary in finding that the residential zoning, originally made, was erroneous. We are further of opinion that there was adequate testimony from which the Board could find that the character of the neighborhood had changed to such an extent that a shopping center was needed somewhere in the vicinity. However, there are other tracts of land in the immediate neighborhood zoned commercial where shopping centers could be erected. The Board in its opinion apparently ignored all the testimony as to the traffic hazards which would result from the erection of the shopping center on petitioner's land. To so reclassify the property would be a plain violation of the statutory requirement against congestion in the streets. From the testimony it appears that there is no way to remedy such a traffic hazard other than the widening of the public highways in the vicinity. There is no testimony that such widening is contemplated. The order must therefore be reversed. Under Chapter 634, Section 366 (g), Acts of 1953, *supra,* we must direct that the costs be paid by the appellants.

*Order reversed, costs to be paid by appellants.*