## MONTGOMERY COUNTY COUNCIL *v.* SCRIMGEOUR

[No. 27, October Term, 1956.]

*Decided December 6, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Alfred H. Carter* and *Joseph P. Blocher, Assistant County Attorneys for Montgomery County,* with whom was *Charles M. Irelan, County Attorney,* on the brief, for appellants.

*Donald K. Staley,* with whom were *Stedman Prescott, Jr.,* and *Staley & Prescott* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree granting an injunction restraining the use of property.

Evelyn T. Scrimgeour, appellee, was the owner of a house and lot located at 8714 Georgia Avenue in Silver Spring, which had a frontage of 44 feet on Georgia Avenue and a depth of 175 feet. This lot at the rear abutted on a large public parking lot and was zoned in September, 1941, under the comprehensive master zoning plan, codified as Chapter 176, Montgomery County Code, 1950, by the County Council for Montgomery County, (the Council), as Residential A. By the 1947 comprehensive master plan for the central business district of Silver Spring, adopted by the Maryland-National Capital Park and Planning Commission, (the Commission), this property was recommended for Residential C Zoning, (residential-multi-family use). On January 1, 1954, the Council completely revised the zoning laws and zoning map for the Maryland-Washington Regional District in Montgomery County, adopted under Chapter 176 of the Montgomery County Code, 1950, *supra.* All property was reclassified into thirteen new general classifications, Chapter 107,

Montgomery County Code, 1955. Under this new ordinance, both the appellee's property, designated herein as B-192, and a property in the same block, 1308 Fenwick Lane, owned by Herbert H. Diamond, and designated as B-198, were classified as R-60 zone, (one-family detached residential), although both properties had been recommended for future R-10 zone, (residential-multi-family use). On January 27, 1955, the appellee filed with the Council an application for a rezoning of her property at 8714 Georgia Avenue from R-60 zone to C-2 zone, (General Commercial).

At the same time pending before the Council was the application B-198 for the rezoning of that property from R-60 zone to C-O zone, (Commercial-Office Building). Both the appellee's property and the Diamond property abutted at the rear on the public parking lot. On March 14, 1955, a public hearing was held on both applications, B-192 and B-198, by the Council, when testimony was taken and exhibits filed. At that hearing the Commission filed an opinion with the Council recommending the denial of both applications. As to B-192, the property before us in this case, the Commission was of opinion that, as recommended by the 1947 plan aforesaid, the R-10, (multi-family use), was the best classification for this property. It stated:

> "The property is not required to be used for single-family dwelling purposes. The Plan calls for multi-family zoning at this point and we are of the opinion that the uses permitted in the R-10 zone plus the additional variety of uses that may be secured through special exception offer appropriate and adequate land uses for this tract.
> "Attention is called to the fact that the nearest commercial use to this property is a tailor and clothes rental business occupying a structure originally built as a dwelling. This structure is set back from the street, has side and rear yards complying with residential standards and it serves as a buffer or transition between the established business concerns to the south and the residential properties to the north."

Practically the same recommendation was made as to application B-198.

On April 5, 1955, the Council granted C-O zoning for B-198 and denied the C-2 zoning for B-192. The reason given for the denial of B-192 was:

> "because the subject property lies a little beyond the north limits of the Silver Spring Business District being separated from the nearest commercial zone by another 44 foot lot and in an area recommended for multi-family use as indicated on the Zoning Plan for the Central Business District and Adjacent Area, Silver Spring, Maryland, adopted January 22, 1947 by the Commission; that if this application is approved it will extend the commercial area beyond the limits of commercial zoning as shown on the Zoning Plan and by its creation predetermine the case for commercial zoning for the intervening property, and that a restudy and evaluation of the Zoning Plan for Silver Spring during the summer and fall of 1954 revealed that the current Zoning Plan is functioning very well to direct an orderly growth of Silver Spring as expressed in Technical Bulletin No. 2, 'An Economic Analysis of Land Use and Zoning in Silver Spring.'
>
> "The above reasons for recommending disapproval are those guiding the Council in its decision to deny this application. For these reasons and because to deny the application will aid in the accomplishment of a co-ordinated, comprehensive, adjusted and systematic development of the Maryland-Washington Regional District, the application will be denied."

In approving application B-198 the Council stated, among other things, that the unscreened lot to the north of Fenwick Lane, being used by the Woodside Methodist Church, was "hardly conducive to the maintenance of a good residential neighborhood". B-192 does not face on that parking lot. An application for reconsideration of B-192 was filed with the Council on April 13, 1955, which application was denied on

May 10, 1955. There is no provision for judicial review or other appeal under the zoning ordinance of Montgomery County, except in cases of special exceptions.

On June 1, 1955, the appellee filed in the Circuit Court for Montgomery County, in equity, a petition for a mandatory injunction. This alleged the petition of January 27, 1955, filed by the appellee, the denial of the application, the filing of the petition for reconsideration, and the denial of that petition. It stated that on April 5, 1955, the Council granted the application of Herbert H. Diamond for reclassification from R-60 zone to C-O zone of another property in the same block, also abutting on the large parking lot on which appellee's lot abutted in the rear; that the 1947 plan of the Commission recommended petitioner's property as suitable for multi-family residential zoning; that the character of the neighborhood had changed since the adoption in 1947 of the aforesaid zoning plan so as to render the use of her property as residential property of little value and to justify the rezoning applied for; and that the action of the Council was arbitrary, capricious and discriminatory and did not aid in the systematic development of the district. She asked that a mandatory injunction be issued directing the Council to grant the zoning application prayed for, and for other and further relief.

The chancellor found, from the record before the Council, that it showed by unchallenged and uncontradicted facts, that the area immediately surrounding appellee's property had undergone a drastic change within the past four or five years; that the County had recently acquired property upon which private dwellings were erected and had demolished these in order to build a public parking lot in the rear of appellee's property; that the Council had granted commercial office zoning to B-198 on Fenwick Lane within one block of appellee's property, which set a pattern for the entire block; that it appeared beyond a shadow of a doubt that appellee's property was of comparatively little value with the limited uses permitted under multi-family zoning; that there was no valid reason why the property should be confined to residential zoning; and that the record was barren of facts which would make the question fairly debatable. She concluded in her opinion

that the application should have been granted as prayed by the appellee and that the legislative action was arbitrary, capricious, and discriminatory. By decree on March 20, 1956, the chancellor ordered that the Council be perpetually enjoined from preventing or interfering with the use, development or enjoyment by the appellee or her successors in title for any of those uses set forth in Section 176-15, "C-2 General Commercial", of the Montgomery County Code, 1950 Edition as amended. From that decree the appellants, the members of the Council, appeal.

Of course, as stated many times .by this Court, where the legislative body has rezoned or refused to rezone property, the court cannot substitute its judgment for that of the legislative body, if the question is fairly debatable, nor can the court substitute its judgment for that of the zoning authorities as to the wisdom of the action taken. The court will reverse only where there are no grounds for reasonable debate, and where the action of the zoning authorities was arbitrary, capricious, discriminatory, or illegal. *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 437, 121 A. 2d 249; *Hardesty v. Board of Zoning Appeals,* 211 Md. 172, 126 A. 2d 621. There is a presumption that the original zoning was reasonable and constitutional and the burden of proof is upon the petitioner to overcome that presumption. In order for the court to set aside the action of the zoning authorities, it must find that the zoning is beyond the police power and deprives the applicant of property without due process of law. *Gilmor v. Mayor & City Council,* 205 Md. 557, 562, 563, 109 A. 2d 739. The fact that the rezoning would make the property more valuable is not sufficient for rezoning. *Easter v. Mayor & City Council of Baltimore,* 195 Md. 395, 400, 73 A. 2d 491; *Gleason v. Keswick Improvement Association,* 197 Md. 46, 50, 78 A. 2d 164; *Zahn v. Board of Public Works,* 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074. It was said by Judge Henderson in *Mayor & City Council v. Biermann,* 187 Md. 514, 523, 50 A. 2d 804, that "* * * the property owner has the heavy burden of overcoming the presumption of constitutionality of legislative action, even if the legislative body acted without evidence at all."

Mr. Ted Englehardt, an architect and planner, who had been engaged to prepare a sketch for the proposed commercial building on appellee's property, testified that the property was on the edge of the commercial district of Silver Spring and would ultimately be absorbed in the commercial area. The entire area had passed its use as a residential district and he thought appellee's property should be zoned commercial because it abutted the large parking lot which should be surrounded by commercial property. He admitted that there should be parking lots in residential areas adjoining commercial areas. He also admitted that the residential properties on Fenwick Lane, into which the subject property "backed," were rather nice houses in a "good solid Silver Spring community". Mrs. Cora Moore, who owned two properties in the same block, one of which was vacant, testified that she was of the opinion that the appellee's property should be rezoned. Unless this were done she was not encouraged to improve her property. Mr. Bailey Scrimgeour testified that he intended to build a surgical supply store on the subject property for two young men who wished to conduct a business there. He admitted that there was probably some other undeveloped commercial property in Silver Spring which could be used for that purpose. He also admitted that he had a tenant for the property, but that the rent he received and the present taxes, would make it a very unprofitable situation. He presented a petition from thirteen other property owners in the neighborhood requesting that the appellee's application be granted. The record does not show what relation he is to the appellee. A plebiscite of the neighborhood does not determine zoning. *Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346.

Mr. Plummer Shearin, representing the Silver Spring Board of Trade, presented a letter from that Board opposing the rezoning requested for application B-192 and B-198 as the Board thought both of these properties should be parking lots. Mr. John F. Kelly, a member of the Planning and Zoning Committee of the Allied Civic Group, presented a resolution from that group opposing the zoning for B-192 and B-198 for the reason that both properties were outside the central business district as provided in the Master Zoning Plan. Mr.

James R. Lightfoot, a representative of Woodside Park Civic Association of Silver Spring, testified that the area should be extended into a commercial parking lot when a new zoning plan was drawn. That Woodside group also filed a resolution opposing the granting of B-192 and B-198 on the ground that there was sufficient property in the business district of Silver Spring, classified commercial, wholly adequate to meet the commercial needs of the business district in the foreseeable future; failure to adhere to said zoning plan would depreciate the value of business property within the business district as well as residential properties outside the district. The granting of the applications would be contrary to good zoning practice and would tend to destroy the program for compact business districts at intervals. The granting of the applications would be a dangerous step toward destroying the apartment buffer areas separating single family residential areas from the business district. Such piecemeal reclassification would not be in the interest of the community as a whole and would not provide a coordinated, comprehensive or systematic development. The reclassification would be primarily for the personal economic benefit of the respective applicants and not in the interest of the community as a whole. Of course, as above stated, the mere fact that the requested zoning would make the property more profitable is not sufficient ground to set aside the zoning.

From the record before us the following appears: Forty-four feet to the south of the subject property, in the same block, is the beginning of a C-2, (general commercial), zone which extends approximately three hundred feet to the next street to the south, Fidler Lane. Following Fidler Lane, which forms the south boundary of the block in which the subject property lies, all that property in a westerly direction in that block, fronting on the north side of Fidler Lane is presently zoned C-2. The subject lot, fronting 44 feet on Georgia Avenue and with a depth of approximately 175 feet, consists of about 7,784 square feet of land. Adjoining it to the north is another lot 44 feet in width also zoned R-60. Directly north of that lot are two lots also zoned R-60, which are improved by detached single family houses. To the north

of those two lots and across Fenwick Lane is a lot owned by a Methodist Church, which adjoins and which is used as a parking lot by that church. To the east of appellee's property and across Georgia Avenue is vacant land which is zoned R-10, (multi-family residential).

The lot on Fenwick Lane, B-198, in the same block as the subject property, which the Council on application rezoned from R-60 to C-O zone, and upon which reliance is placed by the chancellor, consists of 15,084 square feet. It is 113.4 feet wide, 133 feet in depth, and is approximately 115 feet from the intersection of Georgia Avenue and Fenwick Lane, and, at the time of the rezoning, contained a single family dwelling.

We will assume, without deciding, that the injunction proceeding was the proper remedy in order for the applicant to have the zoning question passed upon by the court. Under the zoning for Montgomery County, by Montgomery County Code, 1955, there were thirteen different zoning classifications. There are three commercial zones: C-O Zone—Commercial-Office Building; C-1 Zone—Local Commercial; and C-2 Zone—General Commercial. The chancellor laid great stress on the fact that B-198 was rezoned C-O. That classification allows churches; one-family detached, one-family semi-detached, two-family multiple and multiple group dwellings; educational institutions; tourist homes; and office buildings, among other things. The appellee requested C-2 zoning and this was ordered by the chancellor. By that zoning, service of a general commercial nature, automobile garages, carnivals, laundries, dry cleaning plants, and animal hospitals are allowed, among other things. Although it is stated that the appellee intends to build a surgical supply store, either she or a subsequent purchaser of the property, if C-2 classification is made, could erect, among other things, an automobile garage, a laundry, or a dry cleaning plant. These classifications are quite different from a commercial office building. Mr. Englehardt, from the testimony before us, says merely that the property should be zoned commercial and makes no distinction in the type of commercial. There appears to be no testimony to support the specific classification of C-2 zoning, other than the general requests by some of the neighbors that the appellee's

application be granted. Nor does there appear to be evidence that C-2 is the only zoning suitable and proper for the subject property. The chancellor states in the opinion that the granting of application B-198 did set a pattern for the entire block by the granting of commercial office zoning at its northern boundary on Fenwick Lane. We must note that there is a great difference between commercial office zoning and general commercial, C-2.

It is not the function of the court in reviewing the action of the zoning authorities to zone or rezone, but only to decide whether the Council's action was arbitrary, capricious, discriminatory, or illegal. *Kroen v. Board of Zoning Appeals,* 209 Md. 420, 427, 121 A. 2d 181. It is not shown here that the present zoning or the R-10 zoning, which the Council apparently will readily grant, so restricts the use of appellee's property that it cannot be used for any reasonable purpose, as in *City of Baltimore v. Cohn,* 204 Md. 523, 530, 105 A. 2d 482, and cases there cited.

We cannot find that the action of the zoning authorities in this case was arbitrary, capricious, discriminatory, or illegal, or that the appellee was deprived of her property without due process of law. At the least, the zoning was reasonably debatable. The order must therefore be reversed.

*Order reversed, with costs.*